**IT IS HEREBY ADJUDGED and DECREED this is SO ORDERED.**

**Dated: October 31, 2005**

_Sarah/Manchley_
**SARAH S. CURLEY**
**U.S. Bankruptcy Judge**

1  Henry J. Kaim (TX Bar 11075400)
   Mark W. Wege (TX Bar 21074225)
2  **BRACEWELL & GIULIANI LLP**
   711 Louisiana Street, Suite 2300
3  Houston, Texas 77002
   (713) 223-2300
4
   and
5
   Daniel P. Collins (AZ Bar 009055)
6  **COLLINS, MAY, POTENZA,**
   **BARAN & GILLESPIE, P.C.**
7  Bank One Center
   201 North Central, Suite 2210
8  Phoenix, Arizona 85073-0022
   (602) 252-1900
9
   Attorneys for Souper Salad, Inc.
10 Debtor in Possession

11

12              **UNITED STATES BANKRUPTCY COURT**
                       **DISTRICT OF ARIZONA**
13
   In re:                          )    Chapter 11
14                                 )
   SOUPER SALAD, INC.,             )    Case No. 2:05-bk-10160-SSC
15                                 )
              Debtor.              )
16                                 )    **ORDER CONFIRMING SOUPER SALAD,**
                                   )    **INC.'S FIRST AMENDED PLAN OF**
17 EID# 74-2210941                 )    **REORGANIZATION**
                                   )
18 _____)

19

20        Souper Salad, Inc., as debtor and debtor-in-possession ("Debtor") in this

21 bankruptcy case (the "Case") having proposed and filed its First Amended Plan of

22 Reorganization under chapter 11 of the United States Bankruptcy Code, along with any

23 modifications thereto (the "Plan");[1] a confirmation hearing on the Plan having been held

24

25 _____
   [1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.
26

1    by the Court beginning on October 31, 2005 (the "<u>Confirmation Hearing</u>"); all objections

2    to confirmation of the Plan having been overruled, resolved or withdrawn; and the Court

3    being aware of the relevant facts upon the record of the Confirmation Hearing, the

4   

5    Affidavits of Matt Wilber, Ben Gonzalez and Bridget Gallerie, any testimony presented,

6    all representations and any proffers offered at the Confirmation Hearing, the Plan

7    Documents filed with the Court and all the proceedings held before the Court in this

8    Case.

9    **NOW, THEREFORE, THE COURT HEREBY FINDS AND CONCLUDES:**

10    A.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this Case pursuant

11    to 28 U.S.C. § 1334. Confirmation of the Plan is a "core proceeding" pursuant to,

12   

13    without limitation, 28 U.S.C. § 157(b)(2)(A), (L) and (O), and this Court has jurisdiction

14    to enter a Final Order confirming the Plan. Venue of this Case is proper pursuant to 28

15    U.S.C. § 1408 and 1409.

16    B.    <u>Approval of the Disclosure Statement</u>. On September 21, 2005, the Court

17    entered its Order (the "<u>Disclosure Statement Approval Order</u>") approving the First

18    Amended Disclosure Statement Under 11 U.S.C. § 1125 in Support of the Debtor's Plan

19   

20    of Reorganization Dated September 16, 2005 (the "<u>Disclosure Statement</u>") as containing

21    "adequate information" within the meaning of § 1125(a)(1) of the Bankruptcy Code.

22    C.    <u>Filing of the Plan</u>. The Debtor filed the final versions of the Plan and

23    Disclosure Statement on September 16, 2005. Certain technical modifications to the Plan

24    were filed on October 26, 2005 (the "<u>Plan Modification</u>"). A copy of the Plan is attached

25   

26    hereto as <u>Exhibit A</u>.

HOUSTON\1898137.5    -2-
Case 2:05-bk-10160-SSC    Doc 392    Filed 10/31/05    Entered 11/01/05 08:44:15    Desc
Main Document    Page 2 of 81

D.    **Solicitation.** On or about September 27, 2005, Bankruptcy Services LLC ("BSI"), the Debtor's claims and solicitation and balloting agent in this case, transmitted a copy of the Disclosure Statement and Plan, the applicable forms of ballot approved by this Court, the recommendation letter by the Committee, and a notice of the Confirmation Hearing, by United States first class mail, postage prepaid, to all Claim holders eligible to vote on the Plan and all other parties as required pursuant to the Disclosure Statement Approval Order.

E.    **Notice.** As approved by the Court, notice of the Confirmation Hearing was provided to parties in interest as described in ¶ D above. Such notice was adequate and sufficient under § 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002 and 3020, and no further notice is required. All parties-in-interest had the opportunity to appear and be heard at the Confirmation Hearing.

F.    **Confirmation Hearing.** The Confirmation Hearing was held by the Court beginning on October 31, 2005. At such hearing, the Plan Modification was approved by the Court and incorporated in the Plan, and the Court announced that the Plan, as modified, was confirmed

G.    **Plan Compliance with § 1129(a)(1).** As required by § 1129(a)(1) of the United States Bankruptcy Code (the "Code"), the Plan complies with the applicable provisions of the Bankruptcy Code, including, without limitation, as follows:

i)    As required by Code § 1123(a)(1), the Plan, in Article II, properly designates classes of claims and interests and classifies only substantially similar

claims and interests in the same classes pursuant to § 1122 of the Bankruptcy Code.

    ii)    As required by Code § 1123(a)(2), the Plan, in Article II, properly specifies the following classes as unimpaired:

- ■    Class 1    Other Priority Claims;
- ■    Class 4    Other Secured Claims; and
- ■    Class 5    PACA Claims.

Article II of the Plan also properly specifies the following classes as impaired:

- ■    Class 2    DIP Facility Claims;
- ■    Class 3    Senior Lender Claims;
- ■    Class 6    Unsecured Claims; and
- ■    Class 7    Equity Interests.

    iii)    As required by Code §§ 1123(a)(3)-(4), Article III of the Plan provides the treatment which each holder of an impaired Claim or Equity Interest is to receive, and the Plan provides the same treatment or its economic equivalent for each Claim or Equity Interest in each particular Class.

    iv)    As required by Code § 1123(a)(5), the Plan provides adequate means for its implementation. These include, but are not limited to, the following: (a) the sources of funding for distributions under the Plan; (b) the cancellation of old Equity Interests and Convertible Subordinated Notes; (c) the issuance of new shares or interests in the Reorganized Debtor; (d) the assumption and rejection of

HOUSTON\1898137.5
-4-
Case 2:05-bk-10160-SSC   Doc 392   Filed 10/31/05   Entered 11/01/05 08:44:15   Desc
Main Document   Page 4 of 81

1  executory contracts and unexpired leases which have not been previously assumed

2  or rejected; and (e) mechanisms for paying Administrative Expense Claims.

3       v)  As required by Code § 1123(a)(6), the charter, or similar document

4  of the Reorganized Debtor and any new affiliate created under the Plan to hold

5  interests in the Reorganized Debtor, will include a provision prohibiting the

6   

7  issuance of nonvoting equity securities and distributing the voting power to the

8  extent required under § 1123(a)(6).

9       vi)  As required by Code § 1123(a)(7), the terms of the Plan are

10 consistent with the interests of creditors and equity security holders and with

11 public policy with respect to the manner of selection of the officers and directors,

12 or persons performing similar functions, of the Reorganized Debtor.

13

14 H.    Plan Compliance with § 1129(a)(2).  As required by Code § 1129(a)(2), the

15 Plan proponents have complied with all applicable provisions of the Bankruptcy Code

16 including, without limitation, § § 1125 and 1126.  Simultaneously with the solicitation of

17 acceptances of the Plan, the Debtor timely transmitted a copy of the Disclosure Statement

18 and Plan and forms of ballot approved by this Court to all holders of Claims eligible to

19 vote on the Plan.  As noted above, the Disclosure Statement was found by the Court to

20  

21 contain "adequate information" following notice and a hearing in compliance with

22 Bankruptcy Rule 3017.

23 I.    Compliance with § 1129(a)(3).  Based upon the entire record of the

24 proceedings before the Court, the Court finds that the Plan is proposed in good faith and

25 not by any means forbidden by law, and therefore complies with the requirements of

26

HOUSTON\898137.5
Case 2:05-bk-10160-SSC   Doc 392   Filed 10/31/05   Entered 11/01/05 08:44:15   Desc
Main Document     Page 5 of 81
-5-

Code § 1129(a)(3). In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the Debtor's chapter 11 filing and the formulation of the Plan, including the strong support of the Plan by all impaired classes of Claims entitled to vote on the Plan. The Case was filed and the Plan was proposed for the valid and honest business purpose of restructuring the Debtor's pre-petition indebtedness and operations. The Plan is the product of extensive, arms' length negotiations among the Debtors, the DIP lenders, the Senior Lenders and the Creditors' Committee. The Plan reflects the results of these negotiations and embodies the best interests of all constituencies of the Debtor's estate.

J.     Compliance with § 1129(a)(4). Pursuant to orders previously entered in this Case approving the retention of Professionals, payments made or to be made by the Debtor for services rendered or for costs and expenses incurred in connection with this Case, or in connection with the Plan and incident to this Case, are subject to the approval of the Court as reasonable. Accordingly, the Plan complies with § 1129(a)(4) of the Bankruptcy Code.

K.     Plan Compliance with § 1129(a)(5).

)) The Debtor has disclosed the identity and affiliations of the individuals who will serve as directors, or persons performing similar functions, and principal officers of the Reorganized Debtor following the Effective Date, in compliance with § 1129(a)(5)(A) of the Bankruptcy Code as stated in the Notice of Designation of the Post-Effective Date Directors and Officers of the Reorganized Debtor, filed on October 28, 2005.

ii)     The appointment of the directors, or persons performing similar functions, and principal officers (or, for existing directors or principal officers who continue to serve post-confirmation, their continuance in their current positions) is consistent with the interests of creditors and equity security holders and with public policy.   Accordingly, the Plan complies with § 1129(a)(5)(A)(ii) of the Bankruptcy Code.

iii)     The Debtor has disclosed the compensation of the key executive officers. Thus, the Plan complies with § 1129(a)(5)(B) of the Bankruptcy Code.

L.     <u>Plan Compliance with § 1129(a)(6)</u>.   No governmental regulatory commission has jurisdiction over the approval of the Debtor's rates.   Thus, § 1129(a)(6) of the Bankruptcy Code is inapplicable.

M.     <u>Plan Compliance with § 1129(a)(7): Best Interests of Creditors</u>.     As required by Code § 1129(a)(7) and as evidenced by Article XVI of the Disclosure Statement and Exhibit D thereto and the testimony adduced or proffered at the Confirmation Hearing, each holder of a Claim or interest in an impaired class either accepted the Plan or will receive or retain property of a value that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.   As demonstrated by Exhibit D to the Disclosure Statement, the holders of Equity Claims in Class 7, which receive nothing pursuant to the Plan, would also receive nothing under Chapter 7 of the Bankruptcy Code.

N.     <u>Plan Compliance with § 1129(a)(8)</u>. The following classes are unimpaired: Classes 1, 4, and 5. All other classes are impaired. As set forth in the certified report of

balloting filed herein and admitted into evidence at the Confirmation Hearing, Classes 2, 3 and 6 are the only Classes entitled to vote. Class 7 is impaired and will receive nothing under the Plan and, therefore, is statutorily deemed to have rejected the Plan under § 1126(g) of the Bankruptcy Code. Notwithstanding the existence of an impaired, rejecting class, confirmation as to that class is proper under Code § 1129(b), as set forth in ¶ T below, as such class is the deemed rejecting class of equity interests.

O.    <u>Compliance with § 1129(a)(9)</u>. The Plan provides for the treatment of administrative and priority claimants in accordance with the requirements of Code § 1129(a)(9) (except to the extent that a holder has agreed otherwise) as follows:

a.    Pursuant to Article III.A 1 of the Plan, except as otherwise provided for in the Plan, and subject to the requirements of Article XIV.A of the Plan, on the latest of (a) the Initial Distribution Date, (b) the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (c) the date such Administrative Expense Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Expense Claim (i) Cash equal to the unpaid portion of such Allowed Administrative Expense Claim, or (ii) such other treatment as the Debtor and such holder shall have agreed.

b.    Pursuant to Article III.A 2 of the Plan, on the latest of (a) the Initial Distribution Date, (b) the date such Priority Tax Claim becomes an Allowed

Priority Tax Claim, or (c) the latest date on which such Priority Tax Claim may be paid without penalty under applicable law, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, Cash equal to the unpaid portion of such Allowed Priority Tax Claim, together with interest thereon from the Effective Date until the date it is actually paid at the applicable rate under state or federal law.

P.    Compliance with § 1129(a)(10). § 1129(a)(10) of the Bankruptcy Code is satisfied because at least one Class of Claims that is impaired under the Plan has accepted the Plan, which acceptance was determined without including any acceptance of the Plan by an insider holding a Claim in such Class. Specifically, Class 6, which is impaired pursuant to the Plan, has, without including the votes of any insiders of the Debtor, accepted the Plan. The certified balloting report of BSI, the Debtor's balloting agent, offered by the Debtor at the Confirmation Hearing, provided an accurate tally of votes for Class 6 and showed that more than one-half in number and at least two-thirds in amount of those actually voting in Class 6 voted to accept the Plan. Additionally, both Class 2 and 3 voted to accept the Plan.

Q.    Feasibility (§ 1129(a)(11)). Based upon the testimony offered and exhibits introduced at the Confirmation Hearing, and Article XVI and other sections of the Disclosure Statement and Exhibits D and G to the Disclosure Statement, the Debtor has demonstrated that the Plan is feasible and is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor.

HOUSTON\1898137.5
Case 2:05-bk-10160-SSC    Doc 392    Filed 10/31/05    Entered 11/01/05 08:44:15    Desc
Main Document    Page 9 of 81

R.    Compliance with § 1129(a)(12). All fees payable under 28 U.S.C. § 1930 have been paid or will be paid as such fees become due.

S.    Compliance with § 1129(a)(13). The Debtor has no retiree medical benefits subject to § 1114 of the Bankruptcy Code. Therefore, § 1129(a)(13) is inapplicable.

T.    Confirmation Notwithstanding Deemed Rejection By Class 7 (§ 1129(b)). The Debtor has moved for the Court to confirm the Plan despite its deemed rejection by Class 7, which receives no distribution under the Plan. In compliance with § 1129(b), and as a matter of law, the Plan may be confirmed despite the deemed rejection by Class 7. No holder of a Claim or interest that is junior to any of Class 7 receives or retains property under the Plan. Furthermore, the Plan treats Class 7 according to its relative priorities and thus does not unfairly discriminate against the holders of interests in Class 7 and is fair and equitable. Accordingly, the Plan complies with the requirements of § 1129(b) of the Bankruptcy Code.

U.    Other Requirements. No other Chapter 11 plan has been confirmed in this case and, therefore, the Plan complies with Code § 1129(c). The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of § 5 of the Securities Act of 1933, as amended, and, therefore, the Plan complies with § 1129(d) of the Bankruptcy Code.

V.    Discharge, Injunction, Releases and Exculpations. The discharge, injunction, releases, exculpations and other provisions contained in Article X of the Plan are essential elements to the overall objectives of the Plan and form a material inducement, among other things, (i) to holders of the Allowed Senior Lender Claims to

exchange their Allowed Senior Lender Claims for Reorganized Debtor Common Stock and (ii) to SKM to waive and release any claims against the Debtor and its estate. Without the discharge, injunction, releases, exculpations and other provisions the Plan could not have been proposed. They serve, to the greatest extent possible, to resolve claims, if any, among or against the parties in interest in this Case, with respect to the Debtor, its organization, capitalization and reorganization and avoid associated litigation costs. Such resolution reduces the possibility of post-confirmation contribution and indemnity claims against the Debtor and reduces the likelihood of the Debtor's involvement in costly and time-consuming litigation. The releases provided for in the Plan were voluntarily and knowingly granted by the Debtor. To the extent that the release provisions of Article X of the Plan benefit non-debtor parties, such releases constitute an integral part of the Plan and are the result of fair consideration provided by or on behalf of such non-debtor parties and are integral elements of the settlements and compromises incorporated in the Plan. The concessions made by the parties are fair, equitable and reasonable consideration sufficient to support the granting of releases or related relief to such non-debtor parties.

W.    Assumption and Rejection of Executory Contracts and Unexpired Leases. The Plan is hereby deemed to constitute and incorporate a motion by the Debtor to reject as of and conditioned upon the occurrence of Effective Date, each Executory Contract to which it is a party, unless such Executory Contract (1) was previously assumed or rejected by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is specifically listed on the amended Exhibit E of the Debtor's Disclosure Statement as

being assumed by the Debtor; (4) is a License, other than a License specifically listed on Exhibit F of the Debtor's Disclosure Statement as being rejected by the Debtor. This Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the Executory Contract rejections and assumptions described above, as of the Effective Date unless the applicable Executory Contracts have previously been assumed or rejected by order of the Bankruptcy Court or as a matter of law. To the extent that any of the insurance policies of the Debtor are deemed to be an Executory Contract, each such policy is assumed and retained by the Reorganized Debtor.

Unless otherwise provided on Exhibit E of the Debtor's Disclosure Statement, each Executory Contract that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all Executory Contracts appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to any order of the Bankruptcy Court that may be entered prior to, at or after Confirmation, including this Confirmation Order. Any Claim arising from the Debtor's rejection of an Executory Contract will be classified as an Unsecured Claim and must be submitted pursuant to the

HOUSTON\1898137.5
Case 2:05-bk-10160-SSC Doc 392 Filed 10/31/05 Entered 11/01/05 08:44:15 Desc
Main Document Page 12 of 81

-12-

terms hereof, unless the rejection of such Executory Contract was the subject of a prior rejection order entered in this case. The Bankruptcy Court finds that, unless the subject of written objection filed by the applicable deadline to do so and as otherwise provided for at the Confirmation Hearing, the Cure amount listed in Exhibit E is binding on all parties to the Executory Contracts assumed by the Debtor.

X. <u>Exit Financing</u>. The Debtor has demonstrated that the Debtor has exercised reasonable business judgment in determining to enter into the transactions contemplated by the Exit Financing Facility and related security, collateral and other documents (collectively, the "<u>Exit Financing</u>") on the terms and in the form set forth in the Plan and Disclosure Statement, or in a form substantially similar thereto. The Debtor has provided sufficient and adequate notice of the Exit Financing, including any material modifications thereto, to all parties-in-interest, including those parties on the master service list in the case. All documents necessary to implement the Plan shall, upon execution, be valid, binding, and enforceable agreements and not be in conflict with or violation of any federal or state law.

The terms and conditions of the Exit Financing are found to be fair and reasonable and the consummation of the Exit Financing is in the best interests of the Debtor, and the Debtor's estate and creditors. The Exit Financing was negotiated in good faith and at arms' length and without intent to hinder, delay or defraud the Debtor or any creditor of the Debtor and the Debtor and the Reorganized Debtor, as the case may be, is entering into the Exit Financing for good and valuable consideration.

The Exit Financing is an essential element of the Plan and the Debtor's and the Reorganized Debtor's (as the case may be) entry into the Exit Financing is necessary for the implementation of the Plan.

Y.   Objections to Confirmation. Confirmation of the Plan has been objected to by the taxing authorities for County of Brazos, County of Denton, City of Waco, Waco ISD, County of Williamson and such objections have been resolved, by the agreement found in paragraph 24 below. Additionally, an informal objection was offered by the CNA Companies, and that objection was resolved by the agreement found in paragraph 25 below.

Z.   Exemptions from Securities Laws. The offering, sale, issuance and distribution of shares of the Reorganized Debtor Common Stock pursuant to the Plan to the holders of Allowed Senior Lender Claims are exempt from registration under the Securities Act of 1933, as amended, and similar state laws pursuant to section 1145 of the Bankruptcy Code.

AA.   Judicial Notice. Judicial notice hereby is taken of the docket of the Case maintained by the Clerk of the Bankruptcy Court and/or duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and the transcripts of, and all evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of the Case.

BB.   Findings and Conclusions. The foregoing findings and conclusions satisfy the requirements of Federal Rule of Bankruptcy Procedure 7052. All findings of facts shall also be deemed to be conclusions of law hereunder and vice versa. All offers of

proof and discussions on the record at the Confirmation Hearing shall constitute additional findings and conclusions with respect to this Order.

CC. <u>Transfer Tax</u>. All transfers and issuances by the Debtor and the Reorganized Debtor are transfers under the Plan free from the imposition of taxes of the kind specified in Section 1146(c) of the Bankruptcy Code.

DD. <u>Debtor's Duties</u>. The Debtor has complied and fulfilled all of its obligations and duties with respect to the Estate through the Confirmation Date pursuant to Section 1107 of the Bankruptcy Code.

EE. <u>Conditions to Confirmation</u>. All conditions to Confirmation of the Plan set forth in Article IX of the Plan have been satisfied or waived.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. <u>Confirmation</u>. The Plan, as attached to this Order and with any modifications and clarifications embodied in this Order, is hereby confirmed having met the requirements of Section 1129 of the Code. The terms of this Order are controlling if any inconsistency exists between the Plan and this Order.

2. <u>Binding Effect</u>. The Plan, its provisions and this Order shall be, and hereby are, binding upon the Debtor, any Creditor or equity security holder of the Debtor and any party provided notice of the Case, whether or not the Claim or interest of such creditor, equity security holder or party is impaired under the Plan and whether or not such creditor or equity security holder has voted on or accepted the Plan. The provisions of this Order are nonseverable and mutually dependent.

3. <u>Effect of Plan</u>.

(a)     Except as otherwise specifically provided in the Plan or in this Order, the Confirmation of the Plan shall, subject to the occurrence of the Effective Date, discharge the Debtor and its property and assets from all Claims that existed or arose before the Confirmation Date and extinguish completely all liabilities in respect of any Claim or other obligation or Equity Interest, whether reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that existed or arose from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise existed or arose prior to the Confirmation Date, including, without limitation, all interest, if any, on any such Claims, Equity Interests or obligations, whether such interest accrued before or after the Petition Date, and including, without limitation, any liability of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not a Proof of Claim is filed or deemed filed under section 501 of the Bankruptcy Code, such Claim is allowed under section 502 of the Bankruptcy Code, or the holder of such Claim accepted the Plan. Except as otherwise specifically provided in the Plan or in this Order, the treatment of and consideration to be received by holders of Allowed Claims or Equity Interests pursuant to the Plan are in full satisfaction,

settlement, discharge, and release of and in exchange for such holders' respective Claims against or Equity Interests in the Debtor and the Estate.

(b) Except as otherwise specifically provided in the Plan or in this Order, if the Effective Date occurs, this Order shall and shall be deemed to permanently enjoin on and after the Effective Date, all Persons that have held, currently hold or may hold a Claim against, or be owed obligations by, the Debtor or the Estate or any Representative of the Debtor or the Estate, or who have held, currently hold or may hold an Equity Interest in the Debtor, from taking any of the following actions on account of such Claim or Equity Interest: (1) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor, the Estate, or any of their respective Affiliates or Representatives; (2) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, or any of their respective Affiliates or Representatives; (3) creating, perfecting or enforcing in any manner, directly or indirectly, any lien, charge, encumbrance or other Lien of any kind against the Debtor, the Estate, or any of their respective Affiliates or Representatives; (4) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtor, the Estate, or any of their respective Affiliates or Representatives; and (5) proceeding in any manner, directly or indirectly, in any place whatsoever

against the Debtor, the Estate, or any of their respective Affiliates or Representatives.

(c) Pursuant to section 1125 of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under or in connection with the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

(d) The Exculpated Persons shall not have or incur any liability to any Person for any act taken or omission made in good faith in connection with or in any way related to, or arising out of, the Bankruptcy Case, or the negotiating, formulating, implementing, confirming, or consummating the Plan, the Disclosure Statement or any contract, instrument, filing with governmental agencies, release, or other agreement or document created in connection with or related to the Plan, the Disclosure Statement or the administration of the Bankruptcy Case, or with respect to any liability, claim or cause of action, whether known or unknown, asserted or unasserted, belonging to or assertable by the Debtor or the Estate against the Exculpated Persons, from the beginning of time until the Effective Date. The Exculpated Persons shall have no liability to any Person for actions taken in good faith under or relating to the Plan or the other matters described

above or in connection with the administration of the Bankruptcy Case including, without limitation, failure to obtain confirmation of the Plan or to satisfy any condition or conditions precedent, or waiver of or refusal to waive any condition or conditions precedent to Confirmation or to the occurrence of the Effective Date. Further, the Exculpated Persons shall not have or incur any liability to any Person for any act or omission in connection with or arising out of their administration of the Plan, except for gross negligence or willful misconduct as determined by the Bankruptcy Court.

(e) Neither the Debtor, the Reorganized Debtor nor any of their respective officers, directors, employees, advisors, attorneys, agents or Representative as of the Petition Date, shall have or incur any liability to any holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective agents, employees, Representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Case, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan or the property to be distributed under the Plan, so long as such act or omission was made in good faith and not in willful violation of the Bankruptcy Code. In all respects they shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

(f) Notwithstanding any other provision of the Plan, no holder of a Claim or Equity Interest, no other party in interest, none of their respective directors, officers, partners, members, shareholders, agents, employees, Representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtor, or any of its officers, directors, employees, advisors, attorneys, agents or Representatives as of the Petition Date, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan or the property to be distributed under the Plan, so long as such act or omission was made in good faith and not in willful violation of the Bankruptcy Code. In all respects they shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

(g) On the Effective Date, in consideration for, and as part of the treatment afforded to holders of claims (including, but not limited to, Claims) under the Plan, and for other valuable consideration, each of the Persons who are or after the Petition Date were directors or officers of the Debtor, and each of the DIP Lenders, the Administrative Agent, the Senior Lenders, the Senior Agent, SKM and each of the Debtor's, DIP Lenders', the Administrative Agent's, the Senior Lenders', Senior Agent's and SKM's respective Representatives, predecessors, participants and Affiliates shall be forever irrevocably and unconditionally released and discharged from any and all claims, actions, suits, debts, accounts,

causes of action, agreements, promises, damages, judgments, demands and liabilities which any of the Debtor or Claimants or other Persons may have against them, whether held directly, indirectly, or derivatively, which are in any way related to the Debtor, or any of their Affiliates, and arise from facts, circumstances, events or conditions occurring or otherwise existing prior to the Effective Date. This release shall include all claims or causes of action, whether known or unknown, and all acts and omissions, whether intentional or otherwise.

(h) On the Effective Date, in consideration for and as part of the treatment afforded to holders of claims (including, but not limited to, Claims) under the Plan, and for other valuable consideration, each of the Senior Lenders, the Administrative Agent, Senior Agent, DIP Lenders and SKM and each of their officers, directors, employees, agents, professionals and other Representatives shall be released, from any and all claims or causes of action that the Debtor or any third party (including any Claimants or creditors of the Debtor) may have asserted, could have asserted, or could in the future assert, directly or indirectly, for any actions or omissions arising from or related to the Debtor, the Senior Credit Facility, the DIP Facility or the Case. This release shall include all claims or causes of action, whether known or unknown, and all acts and omissions, whether intentional or otherwise.

(i) Notwithstanding anything in the Plan to the contrary (including, without limitation, Article X.D. (hereof), nothing in the Plan shall, or shall be deemed to, release the Exculpated Persons or any other Persons from, or exculpate the

Exculpated Persons or any other Persons with respect to, their respective obligations or covenants arising pursuant to the Plan.

(j)  Unless otherwise specifically provided in the Plan or this Order, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105, 362 or 524 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

(k)  Unless a taxing authority has asserted a Claim against the Debtor before the Bar Date established therefor, no Claim of such authority shall be Allowed against the Debtor or Reorganized Debtor, the Estate or their respective Representatives for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor or any other Person to have paid taxes or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

(l)  Except as otherwise specifically provided in the Plan or this Order, all Liens, security interests, deeds of trust, or mortgages against property of the Debtor or the Estate shall and shall be deemed to be released, terminated, and nullified as of the Effective Date; and the Bankruptcy Court, at the request of the Debtor, may appoint a Person to execute appropriate releases of such Liens, security interests, deeds of trust or mortgages.  As provided in the Plan and the Exit Financing Facility, the Liens of the holders of the Senior Lender Claims and

the DIP Facility Claims shall be retained by the Exit Financing Lenders, all of which Liens are reaffirmed.

(m)     The revesting of property in the Reorganized Debtor to take place on the Effective Date (i) is a legal, valid and effective transfer of property, (ii) vests Reorganized Debtor with good title to such property, (iii) does not constitute avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law, and (iv) does not subject the Reorganized Debtor or any of its Representatives or debt holders to any liability by reasons of such transfers under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, laws affecting successor or transfer liability. All licenses, permits or similar rights relating to the ongoing business shall remain in full force and effect for the benefit of Reorganized Debtor without further action by it.

(n)     The discharge and injunction and release provisions contained in Articles X.A, X.B, and X.D of the Plan, along with the assumption of any indemnification obligations pursuant to Article XIV.I of the Plan, and those provisions contained herein are fair and equitable, are given for appropriate consideration and are in the best interests of the Debtor, its Chapter 11 estate and the Reorganized Debtor. Such provisions are effective and binding on all parties.

(o)     The provisions contained in Article X.D of the Plan and herein are fair and reasonable and are hereby approved.

4.     Plan Modifications and Clarifications. The modifications made to the Plan filed on October 26, 2005, each of which the Court finds to be non-material, are made to

the Plan and incorporated therein. The Court finds that such modifications do not impair the rights of the creditors adversely.

5. <u>Compromise and Settlement.</u> The Court finds that any compromises as set out in the Plan or this Order are fair and appropriate and proper in light of the circumstances of this Case and the evidence before the Court. The resolution of the Claim of SKM in exchange for a release under the Plan is an appropriate and fair compromise.

6. <u>Authorizations.</u> The parties to the Exit Financing are authorized and empowered to take such steps and to execute such instruments and documents as may be necessary or required to assist in the implementation of all transactions contemplated by the Exit Financing, including, but not limited to, the execution, delivery, filing and recording of the documents and instruments as are necessary or appropriate to effectuate, implement or consummate fully the Exit Financing, the Plan or this Order.

The Debtor and, as applicable, the Reorganized Debtor, are authorized and empowered to take such steps and to execute such instruments and documents as may be necessary or required to assist in the implementation of all transactions contemplated by the Plan, including, but not limited to, the execution, delivery, filing and recording of the documents and instruments as are necessary or appropriate to effectuate, implement or consummate a transaction providing for transition to another corporate form. The Secretary of State for each relevant jurisdiction is instructed to accept this Order in place of any evidence of resolutions or other corporate actions necessary to amend and restate

such certificates of incorporation or qualifications to do business which might otherwise be required.

Confirmation of the Plan shall constitute the approval of the Charter Amendment, the Exit Financing Facility, and all other instruments, agreements and documents and all actions by the officers of the Debtor and the Reorganized Debtor by its Board of Directors and shareholders and all other corporate action necessary on the part of the Debtor, the Reorganized Debtor or otherwise to authorize the Charter Amendment, the Exit Financing Facility, and all other instruments, agreements and documents and actions by officers as may be necessary or appropriate to effectuate and further evidence the terms of the Plan and the matters and actions contemplated thereby.

7.    No Tax or Assessment; Governmental Authorities.

(a)    Pursuant to section 1146(c) of the Bankruptcy Code, (i) the issuance, sale, distribution, transfer or exchange of any debt instrument, debt security, equity security or other interest in the Debtor, Reorganized Debtor, or their affiliates, (ii) the creation, modification, consolidation or recording of any mortgage, deed or trust lien or other security interest, (iii) the making, assignment or recording of any lease or sublease or (iv) the making, delivery or recording of any deed or other instrument of transfer under or in connection with the Plan, will not be subject to any tax, including, without limitation, any document recording tax, mortgage recording tax, stamp tax, conveyance fee or similar tax or government assessment that may otherwise be charged in connection with the Exit Financing.

(b)     Consistent with § 7(a) of this Order, each federal, state, commonwealth, local, foreign or other governmental agency (including, without limitation, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded) is hereby directed and authorized to accept any and all documents, mortgages, deeds of trust and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan, this Order and the Exit Financing, without requiring the payment of any tax under any law imposing a stamp tax, conveyance fee or similar tax to the fullest extent permitted under Section 1146(c) of the Bankruptcy Code. Notice of entry of this Order in the form and manner approved by the Court in Section IX. D hereof, (i) shall have the effect of service of this Order, shall constitute sufficient notice of the entry of this Order to such filing and recording officers, and (iii) shall be a recordable instrument notwithstanding any contrary provision of non-bankruptcy law. The Court specifically retains jurisdiction to enforce the foregoing directions, by contempt or otherwise.

(c)     The transactions contemplated in the Plan are not subject to and are exempt from any applicable bulk transfer or similar law.

8.     Rejection of Certain Executory Contracts and Unexpired Leases. Except as otherwise provided in the Plan or in this Order, as of the Effective Date the Debtor shall be deemed to have rejected each Executory Contract to which it is a party, unless such Executory Contract (1) was previously assumed or rejected by the Debtor;

(2) previously expired or terminated pursuant to its own terms; (3) is specifically listed on the Amended Exhibit E of the Debtor's Disclosure Statement (as may be supplemented or modified) as being assumed by the Debtor; (4) is a License, other than a License specifically listed on Exhibit F of the Debtor's Disclosure Statement (as may be supplemented or modified) as being rejected by the Debtor; or (5) is the subject of a motion to assume filed by the Debtor on or before the date of the Confirmation Hearing. This Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the Executory Contract rejections and assumptions described above, as of the Effective Date unless the applicable Executory Contracts have previously been assumed or rejected by order of the Bankruptcy Court or as a matter of law. To the extent that any of the insurance policies of the Debtor are deemed to be an Executory Contract, each such policy is assumed hereunder and retained by the Estate.

Unless otherwise provided on the amended Exhibit E of the Debtor's Disclosure Statement (as may be supplemented or modified), each Executory Contract that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all Executory Contracts appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of

the foregoing agreements has been rejected pursuant to any order of the Bankruptcy Court that may be entered prior to, at or after Confirmation, including this Order. Any Claim arising from the Debtor's rejection of an Executory Contract will be classified as an Unsecured Claim and must be submitted pursuant to the terms hereof unless the subject of a prior rejection order entered in this Case, in which event such other Order shall control.

9. **Retention of Jurisdiction.** The Court shall, and hereby does, retain jurisdiction of these Cases for all of the purposes set forth in Article XII of the Plan and for the purposes provided in §§ 1127(b) and 1142 of the Bankruptcy Code and Bankruptcy Rule 3020(d).

10. **Exit Financing.** The terms of the Exit Financing, as referenced in Article IV of the Plan and as provided in the Plan Documents, are approved. The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit (without further application to the Bankruptcy Court) the execution, delivery, filing and recordation of the Exit Financing Facility Documents and all transactions contemplated by such documents with respect to the Exit Financing, as provided by the Plan.

11. **Reporting.** The Debtor's first preliminary or interim reports of distribution shall be prepared and filed with the Court and the Office of the United States Trustee. The Debtor shall prepare and file any further interim reports as the Court shall deem necessary.

12. <u>Bar Date for Certain Claims</u>. Notice of all final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to the Debtor or the Creditors' Committee prior to the Effective Date must be filed and served on the Debtor and those parties who have requested special notice pursuant to Bankruptcy Rule 2002(i), no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.

13. <u>Statutory Fees</u>. Any fees remaining due under 28 U.S.C. § 1930 shall be paid on the Effective Date, and fees which shall accrue in the future shall be paid by the Reorganized Debtor.

14. <u>Obligation of Reorganized Debtor on Assumed Real Property Leases</u>. Notwithstanding the anything to the contrary in the Plan, any of the accrued but unbilled charges, due on the assumed Real Property Leases following the Confirmation Date, for certain charges, including, but not limited to, common area maintenance, insurance and tax reconciliations or year-end adjustments shall be billed and shall be paid by either the Reorganized Debtor or the applicable landlord, as provided under the terms of the applicable Real Property Lease; this provision shall not modify the rights or obligations of the parties to any such Real Property Lease.

15. <u>Substantial Consummation</u>. The Plan shall be deemed to substantially consummated on the Effective Date.

16. <u>Notice of Confirmation</u>. Service of the notice of confirmation and the occurrence of the Effective Date shall be made by first class mail on or before ten (10)

days after the Effective Date upon the following: (i) the Office of the United States Trustee, (ii) the Creditors' Committee, (iii) all known creditors of the Debtor, (iv) all equity security holders of the Debtor and (v) all parties having requested notices in these cases. Such notice shall constitute good and sufficient notice of this Order in compliance with the provisions of Bankruptcy Rules 3020(c) and 2002.

17. <u>Effect of Reference to Plan in this Order</u>. The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect and enforceability of such provision, and each provision of the Plan shall have the same validity, binding effect and enforceability as if fully set forth in this Order.

18. <u>Headings</u>. Headings utilized herein are for the convenience of reference only, and shall not constitute a part of the Plan or this Order for any other purpose.

19. <u>Reversal</u>. If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtor. Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order, the Plan, all documents relating to the Plan and any amendments or modifications to any of the foregoing.

20. <u>Inconsistencies</u>. In the event of any discrepancies, inconsistencies or conflicts between the Plan or other document executed under or in connection with the Plan, the provisions of the Plan shall govern.

21. <u>Integration of Confirmation Order Provision</u>. The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

22. <u>Final Order</u>. This Order is Final Order and the period in which an appeal must be filed shall commence immediately upon the entry hereof. Notwithstanding Bankruptcy Rule 3020(e), this Order shall be effective and enforceable immediately upon entry hereof.

23. <u>Additional Non Material Modifications to the Plan</u>. Section X.D.2 of the Plan is replaced by the following:

> "On the Effective Date, in consideration for, and as part of the treatment afforded to holders of claims (including, but not limited to, Claims) under this Plan, and for other valuable consideration, each of the Persons who are or after the Petition Date were directors or officers of the Debtor, and each of the DIP Lenders, the Administrative Agent, the Senior Lenders, the Senior Agent, SKM, and each of the Debtor's, DIP Lenders', the Administrative Agent's, the Senior Lenders', the Senior Agent's and SKM's respective Representatives, predecessors, participants and Affiliates shall be forever irrevocably and unconditionally released and discharged from any and all claims, actions, suits, debts, accounts, causes of action, agreements, promises, damages, judgments, demands and liabilities which any of the Debtor or Claimants or other Persons may have against them, whether held directly, indirectly, or derivatively, which are in any way related to the Debtor, or any of their Affiliates, and arise from facts, circumstances, events or conditions occurring or otherwise existing prior to the Effective Date. This release shall include all claims or causes of action, whether known or unknown, and all acts and omissions, whether intentional or otherwise."

24. <u>Agreement and Resolution of Objection with Certain Texas Ad Valorem Taxing Authorities</u>. Ad valorem taxes owed under the Texas Property Tax Code for the 2005 tax year shall be paid in the ordinary course prior to delinquency. Such claims shall retain any valid statutory liens until paid, and such liens shall not be primed by any exit financing. Any objections to these claims shall be filed not later than 120 days after the Effective Date, and a reserve shall be established for any such claims in the full amount asserted by the Texas ad valorem tax jurisdictions. Any claims objected to shall accrue interest at the statutory rate commencing on February 1, 2006, through such time as any such claims subsequently allowed are paid in full, not later than thirty days after their allowance.

25. <u>Agreement and Resolution of Informal Objection with CNA Companies</u>. Notwithstanding anything to the contrary contained in the Plan or Confirmation Order, nothing contained in the Plan or Confirmation Order shall enlarge, reduce, modify, impair or affect in any way the parties' rights, defenses and exclusions under: (a) any policies of insurance or related agreements (individually or collectively, the "Insurance Agreements") entered into by the CNA Companies on the one hand, and the Debtor on the other hand. In particular, (i) the corporate restructuring proposed in the Plan shall have no effect whatsoever on the scope of coverage and related duties under the Insurance Agreements, (ii) the CNA Companies (as defined below) shall retain all of their respective rights of setoff and/or recoupment under the Insurance Agreements and applicable law, to the extent applicable, and (iii) the CNA Companies shall not be deemed to have released any of the non-Debtor parties released pursuant to XV. D. of the

Plan from any independent contractual obligations these parties may have to the CNA

Companies, or from any claims whatsoever that the CNA Companies may now or

hereafter hold against the insurance brokers or insurance agents of the Debtor. Subject to

the terms and conditions of the respective letters of credit and related policies of

insurance and applicable agreements, (i) Continental Casualty Company, Transportation

Insurance Company, Continental Casualty Company, American Casualty Company of

Reading, Pennsylvania, CNA ClaimPlus, Inc., as successor-in-interest to RSKCo

Services, Inc. and their American insurance affiliates (collectively, the "CNA

Companies") shall be entitled, only if permitted under the applicable letters of credit and

related policies of insurance and applicable agreements, to retain and hold any and all

letters of credit issued for its benefit and for the account of the Debtor, together with any

proceeds thereof (the "CNA Letters of Credit") and (ii) the CNA Companies shall be

entitled to draw on the CNA Letters of Credit as and when permitted under the terms of

such letters of credit, the CNA Companies' policies of insurance and related agreements

with the Debtors. The Debtor and Reorganized Debtor reserves all rights that it might

have under the terms of the applicable letters of credit and related policies of insurance

and applicable agreements to assert any demands for return or release of the CNA Letters

of Credit.

Nothing contained in the Plan shall be deemed in any respect to enlarge the CNA

Companies' rights under their respective policies of insurance or related agreements with

the Debtor or under applicable law. The CNA Companies shall preserve all rights and

defenses under applicable law that it may have as against any Person holding a Claim

HOUSTON\1898137.5      -33-
Case 2:05-bk-10160-SSC    Doc 392    Filed 10/31/05    Entered 11/01/05 08:44:15    Desc
Main Document     Page 33 of 81

against the Debtor that may assert such Claim against any of the Insurance Agreements, and the Debtor shall preserve all rights and defenses under applicable law to any such Claims asserted against the Insurance Agreement; and the Plan or Confirmation Order shall not limit the Debtor's or the CNA Companies' rights to defend any Claims made as against the Insurance Agreements.

The CNA Companies and the Debtor agree that the Cure amount under the Plan for all known, liquidated amounts owing to CNA Companies under the Insurance Agreements following conversion to incurred loss billing shall be the sum of $2,000. On the Effective Date, (i) the Insurance Agreements shall be deemed assumed pursuant to 11 U.S.C. § 365(a), (ii) billing under the Insurance Agreements shall convert to an incurred loss basis, and (iii) the CNA Companies, in good faith, shall commence and complete a collateral adjustment calculation in accordance with the terms of the Insurance Agreements (the "Collateral Review"). CNA shall promptly reduce or return any collateral as required by the result of the Collateral Review, and shall in good faith seek to complete such Collateral Review by no later than December 31, 2005.

26. Charter Amendment. On the Effective Date, after the cancellation of the Equity Interests and the Convertible Subordinated Notes and the issuance of the Reorganized Debtor Common Stock to the holders of the Allowed Senior Lender Claims, the restated articles of incorporation, as amended, of the Debtor shall be amended by the Charter Amendment, which shall be signed and filed, or caused to be filed, by the President or any Vice President or other authorized officer of the Debtor.

27.     Post-Confirmation Board.  On the Effective Date, the management, control and operation of the Reorganized Debtor shall become the general responsibility of the board of directors of the Reorganized Debtor (the "Post-Confirmation Board"), which shall, thereafter, have responsibility for the management, control and operation of the Reorganized Debtor in accordance with applicable law.  As of the Effective Date, the Post-Confirmation Board shall consist of four (4) members to be designed by the Senior Lenders and one (1) non-director board observer to be designed by the CEO of the Reorganized Debtor.

28.     Redomestication or Conversion.  On or after the Effective Date, the Reorganized Debtor may, but shall not be required to, (1) change the jurisdiction of its organization from the State of Texas to the State of Delaware or (2) change its organizational form from a business corporation to a limited liability company.  The Reorganized Debtor may effect such changes by means of a merger or conversion, as authorized by the laws of the State of Texas and, if the Reorganized Debtor is changing its jurisdiction of organization, the State or Delaware.  Confirmation of this Plan shall constitute the approval of such changes and the transactions contemplated thereby by all of the holders prior to or on the Effective Date of the common stock of Debtor and the Reorganized Debtor and of the holders of any other Equity Interests whose vote or approval may be required and also constitutes all other corporate action necessary on the part of the Debtor, the Reorganized Debtor or otherwise, to authorize such changes and the transactions contemplated thereby.  Appropriate documents with respect to any such merger or conversion which the Reorganized Debtor elects to effect shall be signed and

1    filed or caused to be filed by the President or any Vice President or other authorized

2    officer of the Reorganized Debtor.

3

4

5                    UNITED STATES BANKRUPTCY JUDGE



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | ) |
| | ) |
| Souper Salad, Inc. | ) Case No. 2:05-BK-10160-SSC |
| | ) |
| Debtor. | ) Proceedings Under Chapter 11 |

## FIRST AMENDED PLAN OF REORGANIZATION OF
## SOUPER SALAD, INC., AS MODIFIED

Henry J. Kaim
Mark W. Wege
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002

-and-

Daniel P. Collins
COLLINS, MAY, POTENZA,
     BARAN & GILLESPIE, P.C.
Bank One Center
201 North Central, Suite 2210
Phoenix, Arizona 85073-0022

Attorneys for Souper Salad, Inc.
Debtor and Debtor-in-Possession

Dated: September 16, 2005

# TABLE OF CONTENTS

**Page**

I.   DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME ....................................................................................................... 1

    A.   Definitions ........................................................................................ 1

    B.   Rules of Interpretation ..................................................................... 1

    C.   Computation of Time ....................................................................... 2

II.  CLASSIFICATION OF CLAIMS AND INTERESTS ................................... 2

    A.   Introduction ...................................................................................... 2

    B.   Unclassified Priority Claims ............................................................ 2

    C.   Classes of Claims and Equity Interests ........................................... 2

    D.   Designation of Impaired Claims and Equity Interests and Unimpaired Claims .............................................................................................. 3

III. TREATMENT OF CLAIMS AND INTERESTS ........................................... 3

    A.   Unclassified Priority Claims ............................................................ 3

    B.   Classes of Claims and Equity Interests ........................................... 4

    C.   Reservation of Claims, Defenses and Setoff Rights ........................ 7

    D.   Post-Petition Interest, Fees and Costs ............................................. 7

IV.  MEANS FOR IMPLEMENTATION OF THE PLAN .................................. 8

    A.   The Merger and the Exit Financing Facility .................................... 8

    B.   Actions on the Effective Date .......................................................... 9

    C.   Securities Matters .......................................................................... 10

    D.   Effectuating Documents; Further Transactions ............................. 10

    E.   Exemption from Certain Transfer Taxes ....................................... 10

V.   ACCEPTANCE OR REJECTION OF THE PLAN ..................................... 10

    A.   Classes Entitled to Vote ................................................................ 10

    B.   Acceptance by Impaired Classes ................................................... 11

    C.   Cramdown ...................................................................................... 11

VI.  PROVISIONS GOVERNING DISTRIBUTIONS ....................................... 11

    A.   Distributions for Claims Allowed as of the Effective Date ........... 11

    B.   Cancellation of Securities or Instruments ..................................... 11

    C.   Means of Cash Payment ................................................................. 11

    D.   Delivery of Distributions ............................................................... 12

-i-

## TABLE OF CONTENTS
### (continued)

E.  Fractional Dollars; De Minimis Distributions ................................................ 12

F.  Withholding and Reporting Requirements .......................................... 12

G.  Setoffs ................................................................................ 12

H.  Prohibition on Distributions Attributable to Claims While Any Avoidance
    Litigation is Pending .............................................................. 13

I.  Distribution Procedures ............................................................ 13

J.  Distribution of the Unsecured Claims Cash .......................................... 13

K.  Interim Distributions .............................................................. 14

L.  Disputed Payments or Distributions ................................................. 14

M.  Further Authorizations ............................................................. 15

VII.  TREATMENT OF EXECUTORY CONTRACTS ................................................... 15

A.  Assumed Contracts .................................................................. 15

B.  Payments Related To Assumption Of Executory Contracts .............................. 16

C.  Bar to Rejection Damages ........................................................... 16

VIII.  PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
       UNLIQUIDATED CLAIMS ............................................................... 16

A.  Responsibility for Objecting to Claims ............................................. 16

B.  Objections to Claims ............................................................... 17

C.  Filing and Assertion of Claims .................................................... 17

D.  No Distributions Until Claim is an Allowed Claim ................................... 17

E.  Voting ............................................................................. 17

F.  Waiver of SKM Claim ................................................................ 18

IX.  CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
     OF THE PLAN ......................................................................... 18

A.  Conditions to Confirmation ......................................................... 18

B.  Conditions to Consummation ......................................................... 18

C.  Waiver of Conditions ............................................................... 19

D.  Notice of Effective Date ........................................................... 19

X.  EFFECTS OF PLAN CONFIRMATION ........................................................ 19

A.  Satisfaction, Release and Discharge of Claims ...................................... 19

B.  Injunction ......................................................................... 20

# TABLE OF CONTENTS
(continued)

Page

C. No Liability for Solicitation or Participation ........................................... 20

D. Releases and Limitation of Liability of Exculpated Persons .............................. 20

E. Plan Obligations Not Released ......................................................... 22

F. Term of Injunctions and Stays ........................................................ 22

G. No Liability for Tax Claims........................................................... 22

H. Release of Liens...................................................................... 22

I. Administration Pending Effective Date .............................................. 23

XI. MODIFICATIONS AND AMENDMENTS ......................................................... 23

XII. RETENTION OF JURISDICTION ............................................................ 23

XIII. COMPROMISES AND SETTLEMENTS ......................................................... 24

XIV. MISCELLANEOUS PROVISIONS............................................................. 25

A. Bar Dates for Certain Claims......................................................... 25

B. Payment of Statutory Fees ........................................................... 25

C. Severability of Plan Provisions...................................................... 25

D. Successors and Assigns............................................................... 25

E. Creditors' Committee ................................................................ 25

F. Binding Effect....................................................................... 26

G. Revocation, Withdrawal, or Non-Consumation ........................................... 26

H. Notices ............................................................................. 26

I. Indemnification Obligations ......................................................... 26

J. Prepayment .......................................................................... 27

K. Governing Law ....................................................................... 27

L. Retention of Actions and Defenses.................................................... 27

M. Plan Controls ....................................................................... 27

N. Substantial Consummation of Plan..................................................... 27

O. Certain Property and Funds .......................................................... 28

P. Responsible Party Injunction ........................................................ 28

Q. Pre-Petition Lawsuits ............................................................... 28

R. Disallowance of Certain Claims ...................................................... 28

S. Defaults ............................................................................ 29

Case 2:05-bk-10160-SSC    Doc 392    Filed 10/31/05    Entered 11/01/05 08:44:15    Desc
Main Document    Page 40 of 81

# TABLE OF CONTENTS
### (continued)

| | | | Page |
|---|---|---|---|
| | T. | Management Equity Compensation Plan | 29 |
| | U. | Management of Reorganized Debtor | 29 |
| XV. | | CONFIRMATION REQUEST | 30 |
| ANNEX A-1 | | | A-1 |

Case 2:05-bk-10160-SSC    Doc 392    Filed 10/31/05    Entered 11/01/05 08:44:15    Desc
Main Document    Page 41 of 81

# FIRST AMENDED PLAN OF REORGANIZATION OF
## SOUPER SALAD, INC.

The Debtor, Souper Salad, Inc., hereby proposes the following First Amended Plan of Reorganization pursuant to the provisions of section 1121 of the Bankruptcy Code.

**THE OFFICIAL COMMITTEE FOR THE UNSECURED CREDITORS IN THIS CASE SUPPORTS THIS FIRST AMENDED PLAN OF REORGANIZATION AND URGES UNSECURED CREDITORS TO VOTE IN FAVOR OF THE PLAN.**

## I. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### A. Definitions

Unless otherwise provided in this Plan, the terms defined in Annex A-1 to this Plan (which appear in this Plan as capitalized terms) have the respective meanings set forth in Annex A-1. Annex A-1 is an integral part of this Plan. Terms and phrases, whether capitalized or not, that are used and not defined in this Plan but that are defined in the Bankruptcy Code have the meanings ascribed to them in the Bankruptcy Code. The meanings of all defined terms shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

### B. Rules of Interpretation

For purposes of this Plan, (a) any reference in this Plan to a contract, instrument, or other agreement or document being in a particular form or on particular terms and conditions means that it shall be substantially in such form or substantially on such terms and conditions; (b) any reference in this Plan to an existing document, agreement, contract, instrument or exhibit means such document, agreement, contract, instrument or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in this Plan to Sections, Articles, Appendices, Annexes, and Exhibits are references to Sections, Articles, Appendices, Annexes, and Exhibits of or to this Plan, as the same may be amended, supplemented or modified; (d) the words "herein," "hereof," "hereto," "hereunder" and other terms of similar import refer to this Plan as a whole and not to any particular Article, Section, subsection or clause contained in this Plan; (e) the words "include," "includes," "including," and other terms of similar import shall be deemed to be followed by the phrase "without limitation"; (f) this Plan shall be liberally construed for the benefit of the Debtor and the Reorganized Debtor regarding the interchangeability of the term "Debtor" with the term "Reorganized Debtor" and other instances of the use of the term "Reorganized;" provided, however, that this provision does not modify, amend, affect, or otherwise alter the effect of the discharge or any other aspect of the Plan, including but not limited to Article X of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

### C. Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## II. CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    Introduction

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date. The establishment of particular Classes or categories of Unclassified Priority Claims does not mean or imply that there are any Allowed Claims that fall into each such Class or category and the Debtor reserves to itself the right to contend that there are no such Allowed Claims in any given Class or category.

### B.    Unclassified Priority Claims

The following Claims with respect to the Debtor shall not be classified and shall not be entitled to vote on this Plan:

1.    Administrative Expense Claims.

2.    Priority Tax Claims.

### C.    Classes of Claims and Equity Interests

Pursuant to section 1122 of the Bankruptcy Code, this Plan classifies the Claims against and Equity Interests in the Debtor as follows:



1.    Class 1 – Other Priority Claims.

2.    Class 2 – DIP Facility Claims.

3.    Class 3 – Senior Lender Claims.

4.    Class 4 – Other Secured Claims.

5.    Class 5 – PACA Claims.

6.      Class 6 – Unsecured Claims.

7.      Class 7 – Equity Interests.

**D.**     **Designation of Impaired Claims and Equity Interests and Unimpaired Claims**

With the exception of the Allowed Claims in Class 1, Allowed Claims in Class 4 and Allowed Claims in Class 5, all Claims and Equity Interests are Impaired. Allowed Claims in Class 1, Allowed Claims in Class 4, and Allowed Claims in Class 5 are not Impaired. All Equity Interests (Class 7) and any Penalty Claims are Impaired, and will not receive or retain any property on account of such Equity Interests or Penalty Claims.

## III. TREATMENT OF CLAIMS AND INTERESTS

**A.**     **Unclassified Priority Claims**

1.      Administrative Expense Claims

Except as otherwise provided for herein, and subject to the requirements of Article XIV.A hereof, on the latest of (a) the Initial Distribution Date, (b) the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (c) the date such Administrative Expense Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Expense Claim (i) Cash equal to the unpaid portion of such Allowed Administrative Expense Claim, or (ii) such other treatment as the Debtor and such holder shall have agreed.

All requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims, other than Ordinary Course Administrative Expense Claims, that have not been paid, released or otherwise settled, including all requests for payment of Professional Fees, must be filed with the Bankruptcy Court and served upon the Debtor no later than the Administrative Expense Claims Bar Date. Any request for payment of Administrative Expense Claims that is not filed by its Administrative Expense Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Estate, the Debtor, the Reorganized Debtor or any of their respective Affiliates or Representatives; provided, however, that Ordinary Course Administrative Expense Claims may be paid in the ordinary course of the Debtor's business and, if not previously paid in the ordinary course of the Debtor's business, shall be paid by the Debtor pursuant to the terms thereof or such other terms as may be agreed upon by the Debtor and by such Claimant.

2.      Priority Tax Claims

On the latest of (a) the Initial Distribution Date, (b) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (c) the latest date on which such Priority Tax Claim may be paid without penalty under applicable law, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, Cash equal to the unpaid portion of such Allowed Priority

Tax Claim, together with interest thereon from the Effective Date until the date it is actually paid at the applicable rate under state or federal law.

**B. Classes of Claims and Equity Interests**

    1.    Class 1 – Other Priority Claims

        On the latest of (a) the Initial Distribution Date, (b) the date such Other Priority Claim becomes an Allowed Other Priority Claim, or (c) the date such Other Priority Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim (i) Cash equal to the unpaid portion of such Allowed Other Priority Claim, or (ii) such other treatment as the Debtor and such holder shall have agreed.

    2.    Class 2 – DIP Facility Claims

        The DIP Facility Claims shall be Allowed in an aggregate amount equal to the DIP Amount, which shall be an amount agreed to by the Administrative Agent, the DIP Lenders and the Debtor at or prior to the Effective Date (including the expected amount of the DIP Final Draw). On the Effective Date, the Reorganized Debtor, the holders of the interests of the Administrative Agent and the Senior Agent, and the holders of the DIP Facility Claims and the Senior Lender Claims shall enter into the Exit Financing Facility. On the Effective Date, (i) the allowed DIP Facility Claims shall be assumed in their entirety by the Reorganized Debtor as part of the obligations under the Exit Financing Facility, and (ii) the holders of the Allowed DIP Facility Claims shall receive, in full and final satisfaction of such Allowed Claims, New Term Loan A Notes and New Term B Notes in an aggregate amount equal to the Allowed DIP Facility Claims, such notes to be apportioned between Term Loan A and Term Loan B as instructed in writing by the Administrative Agent, and to be further apportioned among the holders of the Allowed DIP Facility Claims in accordance with their pro rata share of such Allowed Claims, and (iii) further, the Debtor shall either (a) cause all outstanding and undrawn letters of credit issued under the DIP Facility to be returned to the issuer thereof undrawn, or (b) post with the issuer of such letters of credit under the DIP Facility cash collateral in an amount equal to 105% of the aggregate face amount of all outstanding and undrawn letters of credit. The New Term Loan Notes shall contain the material terms set forth in Article III.B.3(c) of this Plan as provided below.

    3.    Class 3 – Senior Lender Claims

        (a)    Allowance of Senior Lender Claims. The Senior Lender Claims shall be Allowed in the aggregate amount of $37,245,667.38 (which includes accrued and unpaid interest up to, but not including, the Petition Date), plus all other charges, fees and expenses (including attorneys' fees and expenses) for the period up to, but not including, the Petition Date due under the Senior Credit Facility.

        (b)    Distributions and Effects of Acceptance Thereof. On the Effective Date, the Reorganized Debtor, the holders of the interests of the Administrative Agent and the Senior Agent, and the holders of the DIP Facility Claims and the Senior Lender Claims shall (i) enter into the Exit Financing Facility, (ii) the Senior Credit Amount shall be assumed by the

Reorganized Debtor as part of the obligations under the Exit Financing Facility, the (iii) the holders of the Allowed Senior Lender Claims shall receive, in full and final satisfaction of such Allowed Claims, the following:

> (x) New Term Loan A Notes and New Term Loan B Notes in aggregate amount equal to the Senior Credit Amount, such notes to be apportioned between Term Loan A and Term Loan B as instructed in writing by the Senior Agent, and to be further apportioned among the holders of the Allowed Senior Lender Claims in accordance with their pro rata share of such Allowed Claims (or as otherwise instructed in writing by the Senior Agent); and

> (y) one hundred percent of the Reorganized Debtor Common Stock, as described in Article IV.B.

(c)     Principal Terms of the Exit Financing Facility and the New Term Loans. Subject to the occurrence of the Effective Date, the Exit Financing Facility and the New Term Loans shall contain the following principal terms:

Term Loan A: $12,000,000 (inclusive of letters of credit)

Term Loan B: $9,000,000

Interest for Term Loan A: LIBOR + 300 basis points

Interests for Term Loan B: LIBOR + 700 basis points

Amortization of Term Loan A: 12 year amortization schedule. Principal and interest payable on a monthly basis. All outstanding principal balance and accrued and unpaid interest thereon shall be due at maturity.

Payments on Term Loan B: Interest only, payable monthly. All outstanding principal and accrued and unpaid interest thereon shall be due at maturity.

Maturity of Term Loan A: 60 months from the Effective Date.

Maturity of Term Loan B: 60 months from the Effective Date.

Collateral:

Term Loan A: Senior liens and security interests on all or substantially all of the property and assets of the Reorganized Debtor (including reaffirmation of the liens and security interests that secured the Senior Credit Facility).

Term Loan B: Senior liens and security interests (but junior only to the Term Loan A collateral) on all, or substantially all, of the property and assets of the Reorganized Debtor (including reaffirmation of the liens and security interests that secure the Senior Credit Facility).

In addition, the Exit Financing Facility shall also contain the following, all in form and substance acceptable to the Senior Lenders, the DIP Lenders and the Debtor: (i) customary financial covenants, (ii) capital expenditure limitations as agreed, consistent with the financial projections attached as Exhibit C to the Debtor's Disclosure Statement, (iii) affirmative and negative covenants similar to those contained in the Senior Credit Facility, (iv) the requirement of a cash management system to be in form and substance satisfactory to the Senior Agent and DIP Lenders, and (v) loan documentation in form and substance satisfactory to the Senior Agent, DIP Lenders and the Debtor.

(d)     Senior Lenders Reservation of Rights to Reduce New Term Loan Amounts. Notwithstanding anything to the contrary contained in this Plan, the Senior Lenders, in their sole and absolute discretion, reserve the right to reduce the Senior Credit Amount, by written notice provided to the Debtor on or before the final Confirmation Hearing date. In the event that the Senior Lenders make such election to reduce the Senior Credit Amount, the amount of the New Term Loans shall be deemed to be reduced on a dollar for dollar basis as instructed in such writing, but all other terms and provisions of the Plan shall otherwise remain unaltered. Nothing contained in the Plan shall constitute or impose any obligation or duty on the part of the Senior Lenders to exercise the rights provided in this Article III.B.3(d).

(e)     Amendment of Senior Credit Facility and DIP Facility Agreements. As of the Effective Date, the Senior Credit Facility and the DIP Loan Documents, and all of the respective agreements, guaranties, instruments and other documents evidencing the Senior Lender Claims and the DIP Facility Claims, as the case may be, and the respective rights of the holders thereof, shall be amended and restated in their entirety by the Exit Financing Facility Documents.

4.     Class 4 – Other Secured Claims

Each holder of an Allowed Other Secured Claim, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Secured Claim, will receive, unless agreed otherwise, at the election of the Debtor, either (a) Cash in the amount of such Allowed Other Secured Claim, or (b) the Collateral securing the Claim of such Allowed Other Secured Claim, without representation or warranty. In the event that any such Claim is not completely satisfied by such distribution, the deficiency amount will constitute a deficiency claim and such claim will be designated and treated as an Unsecured Claim in Class 6. The holder of an obligation owed to the Debtor subject to a valid Setoff Claim as against an Allowed Claim shall be entitled to the recognition and enforcement, regardless of section 362 of the Bankruptcy Code, of any valid offset right provided by applicable law. The Debtor shall retain the right to contest the amount, validity, priority or other rights of any alleged Other Secured Claim, and pending the determination of whether such Other Secured Claim is an Allowed Other Secured Claim, the Debtor may establish a cash fund in an amount that the Debtor determines, in good faith, should be adequate to satisfy the Allowed amount of such alleged Other Secured Claim. The holder of any Lien securing any such alleged Other Secured Claim shall be required to immediately release its Lien, following the Debtor's filing of a notice of such dispute with the Bankruptcy Court which states the amount the Debtor believes will be sufficient to satisfy the Allowed amount of such alleged Other Secured Claim, and the holder of the alleged Other Secured Claim shall retain its Lien only as against the cash fund so established by the Debtor with respect to such alleged Other Secured Claim. Should the alleged Other Secured Claim, pursuant to a Final Order of the Bankruptcy Court, be Allowed in an amount in excess of the

cash fund established for it, the excess amount of such Claim shall be treated in the manner provided herein for Allowed Administrative Expense Claims. During the pendency of any dispute on the Allowance of an alleged Other Secured Claim, interest may only accrue at the interest rate agreed to by the parties, or as provided by the Bankruptcy Court, and such interest shall be payable only following the Bankruptcy Court's Allowance of the Other Secured Claim then in dispute and only on the portion of such Other Secured Claim so Allowed.

     5.    Class 5 – PACA Claims

Each holder of an Allowed PACA Claim shall receive in full satisfaction, release and discharge of and in exchange for such Claim the full amount of the unpaid portion of such Allowed PACA Claim, in Cash, on or as soon as practicable after the latest of (a) the Initial Distribution Date, (b) the date that is ten (10) Business Days after the date of such PACA Claim became an Allowed PACA Claim, (c) the date set forth in the PACA Claims Order or (d) such other date as may be agreed upon in writing by the holder of such Claim and the Debtor.

     6.    Class 6 – Unsecured Claims

Each holder of an Allowed Unsecured Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Unsecured Claim a Pro Rata Portion of the Unsecured Claims Cash.

     7.    Class 7 –Equity Interests

The holders of all Equity Interests will not receive or retain any property under this Plan and all Equity Interests will be cancelled on the Effective Date.

**THE OFFICIAL COMMITTEE FOR THE UNSECURED CREDITORS IN THIS CASE SUPPORTS THIS FIRST AMENDED PLAN OF REORGANIZATION AND URGES UNSECURED CREDITORS TO VOTE IN FAVOR OF THE PLAN.**

    **C.**    **Reservation of Claims, Defenses and Setoff Rights**

Except as provided in section 502(d) of the Bankruptcy Code or as otherwise specifically provided in this Plan, nothing shall affect, limit or create any party's rights or defenses, both legal and equitable, or create any rights or defenses with respect to any Claims, including, but not limited to, legal and equitable defenses to Claims and rights of setoff that may be preserved under section 553 of the Bankruptcy Code.

    **D.**    **Post-Petition Interest, Fees and Costs**

Except as otherwise provided in this Plan, or in an order of the Bankruptcy Court, no holder of any Claim shall be entitled to the accrual of post-petition interest or the payment by the Debtor of post-petition interest or professional fees or other costs on account of such Claim for any purpose.

## IV. MEANS FOR IMPLEMENTATION OF THE PLAN

### A. The Charter Amendment and the Exit Financing Facility

1. On the Effective Date, after the cancellation of the Equity Interests and the Convertible Subordinated Notes and the issuance of the Reorganized Debtor Common Stock to the holders of the Allowed Senior Lender Claims, the restated articles of incorporation, as amended, of the Debtor shall be amended by the Charter Amendment, which shall be signed and filed or caused to be filed by the President or any Vice President or other authorized officer of the Debtor. The Confirmation Order shall order the actions set forth in this Section.

Confirmation of this Plan shall constitute the approval of the Charter Amendment by all of the holders prior to or on Effective Date of the common stock of Debtor, and the Reorganized Debtor and of the holders of any other Equity Interests whose vote or approval may be required and also constitutes all other corporate action necessary on the part of the Debtor, the Reorganized Debtor or otherwise, to authorize the Charter Amendment, which will be in substantially the form filed with the Bankruptcy Court as a Plan Document.

2. Confirmation of this Plan shall constitute, as of the Effective Date, approval of the Exit Financing Facility. The material documentation of the Exit Financing Facility will be in substantially the form filed with the Bankruptcy Court as Plan Documents and shall be in form and substance acceptable to the DIP Lenders, Senior Lenders and the Debtor. The Confirmation Order shall include provisions approving the Exit Financing Facility in substantially the forms filed as Plan Documents, with such changes therein as may be agreed to by the Debtor and the Exit Financing Lenders, and granting the Liens and priority as provided therein; and in furtherance thereof, the Reorganized Debtor shall be authorized to execute such Plan Documents and such other documents as may be agreed to by the Reorganized Debtor that the Exit Financing Lenders may reasonably require. As provided in the documents related thereto, such lenders will retain the Liens of the holders of the Senior Lender Claims and the DIP Facility Claims, all of which Liens will at the Effective Date be reaffirmed. On or before the Effective Date, prior to the execution and delivery of the documents relating to the Exit Financing Facility, the Reorganized Debtor shall borrow and the Exit Financing Lenders shall lend to the Reorganized Debtor the DIP Final Draw.

### B. Actions on the Effective Date

On the Effective Date

1. All Equity Interests and the Convertible Subordinated Notes shall be cancelled.

2. All shares of Reorganized Debtor Common Stock (or similar interests in an LLC) shall be issued to the holders of the Allowed Senior Lender Claims (or other parties as instructed by the Senior Agent) in such proportions as are specified to the Debtor prior to the Effective Date by the Senior Agent, making the holders of such Claims the owners of all of the Reorganized Debtor Common Stock.

3. The restated certificate of incorporation, as amended, of the Debtor shall be amended by the Charter Amendment.

4.     The Reorganized Debtor shall borrow and the DIP Lenders shall lend to the Reorganized Debtor the DIP Final Draw, if such borrowing has not occurred prior to the Effective Date.   The Exit Financing Lenders shall also fund $1.2 million to the Debtor on the Effective Date to be placed in an escrow account on terms and conditions acceptable to the Debtor, the Creditors' Committee and the Exit Financing Lenders (the "Class 6 Escrow") and designated for distribution to the holders of Allowed Unsecured Claims as set forth herein, subject to such rights of the Lenders to return of such funds as provided in Section VI.J.6 of the Plan..

5.     All documents and agreements between Debtor or the Reorganized Debtor and the Exit Financing Lenders with respect to the Exit Financing Facility which have not previously been executed and delivered shall be executed and delivered.   The Exit Financing Facility will amend, replace and restate in their entirety the DIP Facility and the Senior Credit Facility, including the amounts outstanding thereunder (other than amounts attributable to the Reorganized Debtor Common Stock issued to the holders of Allowed Senior Lender Claims). As provided in the documents related thereto, the Exit Financing Facility Lenders will retain the Liens of the holders of the Senior Lender Claims and the DIP Facility Claims, all of which Liens are reaffirmed.

**C.     Securities Matters**

It is an integral and essential element of this Plan that the offering, sale, issuance and distribution of shares of Reorganized Debtor Common Stock pursuant to this Plan to the holders of Allowed Senior Lender Claims be exempt from registration under the Securities Act of 1933, as amended, and similar state laws pursuant to section 1145 of the Bankruptcy Code. The Confirmation Order shall provide (and be binding on all Claimants and parties-in-interest to the Bankruptcy Case), that all such offerings, sales and issuances fall within the exemption provided in section 1145 of the Bankruptcy Code.

**D.     Effectuating Documents; Further Transactions**

On, before or after the Effective Date, the chief executive officer, president, chief financial officer, any vice president or any other appropriate officer of the Debtor or the Reorganized Debtor are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements, instruments or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and the matters and actions contemplated hereby, and the secretary or any assistant secretary of the Debtor or the Reorganized Debtor shall be authorized to certify or attest to any of the foregoing actions, agreements, instruments or documents.

**E.     Exemption from Certain Transfer Taxes**

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from the Debtor to the holder of any Claim pursuant to this Plan (including, without limitation, the Reorganized Debtor Common Stock and the liens and security interests securing the obligations under the Exit Financing Facility) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.   The Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of

9

any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## V. ACCEPTANCE OR REJECTION OF THE PLAN

### A. Classes Entitled to Vote

Each Impaired Class of Claims or Equity Interests that is likely to receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan. By operation of law, each Unimpaired Class of Claims is conclusively presumed to have accepted this Plan and, therefore, is not entitled to vote to accept or reject this Plan and each Class that will receive nothing under this Plan is deemed to have rejected this Plan. Classes 1, 4 and 5 are Unimpaired, and shall be presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 2, 3 and 6 are Impaired, and are therefore entitled to vote to accept or reject this Plan. Class 7 (along with any subordinated or Penalty Claims) will receive nothing under this Plan, and accordingly shall be deemed to have rejected this Plan.

### B. Acceptance by Impaired Classes

An Impaired Class of Claims shall have accepted this Plan if, of the Allowed Claims actually voting, the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of such Allowed Claims and more than 50% in number of such Allowed Claims have voted to accept this Plan.

### C. Cramdown

The Debtor shall request Confirmation of this Plan, as it may be modified from time to time pursuant to Article XI hereof, under Section 1129(b) of the Bankruptcy Code, so long as at least one Impaired Class (which shall include the holders of the Senior Lender Claims) of Claims has accepted this Plan, on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting impaired Class.

## VI. PROVISIONS GOVERNING DISTRIBUTIONS

### A. Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Initial Distribution Date. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to Articles VI and VIII of this Plan.

### B. Cancellation of Securities or Instruments

On the Effective Date, all of the Convertible Subordinated Notes and all instruments evidencing a Claim on account thereof, and all Equity Interests and all instruments evidencing an Equity Interest in the Debtor (other than the Reorganized Debtor Common Stock

issued pursuant to this Plan to the holders of Allowed Senior Lender Claims pursuant to this Plan) shall be cancelled, revoked and rendered null, void and unenforceable.

### C.    Means of Cash Payment

Cash payments made pursuant to this Plan shall be in United States funds by means selected by the Debtor, including by check drawn on a United States bank or wire transfer. Checks issued by the Reorganized Debtor with respect to Allowed Claims in Class 5, Class 6 or Class 7 shall be null and void if not negotiated within six (6) months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of (1) the first anniversary of the Effective Date, or (2) 270 days after the date of issuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

### D.    Delivery of Distributions

Distributions to holders of Allowed Claims shall be made by the Debtor or its agent (1) at the addresses set forth on the Proofs of Claim filed by such holders (or at the last known addresses of such holders if no Proof of Claim is filed or if the Debtor has been notified of a change of address), (2) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim, or (3) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Debtor has not received a written notice of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified of such holder's then current address, at which time, subject to the penultimate sentence in this Section, all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Debtor until such distributions are claimed. All Claims for undeliverable distributions must be made on or before the later of (a) the first anniversary of the Effective Date, or (b) 270 days after the first undeliverable distribution to such holder was attempted, after which date all unclaimed property shall revert to and be retained by the Reorganized Debtor and shall not escheat, and the claim of any holder with respect to such property shall be discharged and forever barred. NO STATE OR OTHER GOVERNMENTAL ENTITY SHALL HAVE ANY RIGHT TO ASSERT A CLAIM AS TO FUNDS NOT DISTRIBUTED, AND ANY CLAIM OF ANY GOVERNMENTAL ENTITY SHALL BE DISCHARGED AS TO SUCH UNDELIVERABLE DISTRIBUTIONS.

### E.    Fractional Dollars; De Minimis Distributions

Any other provision of this Plan notwithstanding, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half-dollars being rounded down. **THE DEBTOR SHALL NOT MAKE ANY PAYMENT OF LESS THAN THIRTY FIVE DOLLARS ($35.00) WITH RESPECT TO ANY UNSECURED CLAIM.** For purposes of payments or checks, the Debtor may combine payments to be made with respect to multiple Claims of the same holder.

### F.    Withholding and Reporting Requirements

In connection with this Plan and all distributions hereunder, the Debtor shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

### G.    Setoffs

The Debtor may (with the exception of the DIP Facility Claims and Senior Lender Claims), but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against such holder. Except as otherwise specifically provided in this Plan, no holder of a Claim may, on account of a pre-Effective Date Claim against any Debtor, setoff, offset, suspend, freeze, or recoup any amount from funds or other payments that such claimant may owe to such Debtor or Reorganized Debtor. The Confirmation Order shall include an injunction prohibiting any such setoff, offset, suspension, freeze, or recoupment.

### H.    Prohibition on Distributions Attributable to Claims While Any Avoidance Litigation is Pending

The Debtor shall make no distributions upon a Claim held by a Claimant against whom the Debtor asserts any Avoidance Action until resolution of the Avoidance Action by settlement or judgment or as otherwise provided by Bankruptcy Court order. With the exception of Preference Claims (a subset of actions that are not included in the definition of Avoidance Actions), Avoidance Actions are retained as property of the Debtor under this Plan and such actions may or may not be pursued, but if pursued may only be pursued by the Debtor or Reorganized Debtor. No party will pursue recovery of Preference Claims.

### I.    Distribution Procedures

Any payment, delivery or distribution by the Debtor pursuant to this Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Debtor or its agent into the United States mail. Distributions or deliveries required to be made by this Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims. No payments or other distributions of property shall be made on account of any Claim or portion thereof unless and until such Claim or portion thereof is Allowed. The Debtor in its discretion may establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution in accordance with the terms of this Plan to holders of Allowed Claims.

### J.    Distribution of the Unsecured Claims Cash

The Unsecured Claims Cash shall be distributed under this Plan as provided in this Section.

1.      The Debtor may either handle the distribution of the Unsecured Claims Cash or may employ or contract with other Persons to assist in or perform such distribution.

2.      The date of the first Interim Distribution shall be on the Initial Distribution Date. In the first Interim Distribution, an Interim Distribution of Unsecured Claims Cash shall be made Pro Rata to the holders of Allowed Unsecured Claims.

3.      If any Unsecured Claim is a Disputed Claim or an undetermined Claim on the date for any Interim Distribution, no distribution shall be made to the holder of such Claim in such distribution. To the extent that an Unsecured Claim is Allowed after the date for any Interim Distribution, the holder thereof shall be entitled to receive from the Unsecured Claims Reserve in the next Interim Distribution after such Claim is Allowed (or on the Final Unsecured Claims Distribution Date, if there is no such Interim Distribution) the amount of Unsecured Claims Cash that such holder would have been distributed through such distribution date if such holder's Unsecured Claim had been an Allowed Unsecured Claim on the date of the previous Interim Distribution.

4.      At the election of the Debtor, Interim Distributions of Unsecured Claims Cash in the Unsecured Claims Reserve may be made on such dates and in such amounts as the Debtor may determine. Such distributions to the holders of Allowed Unsecured Claims on such date that have not previously been distributed any amounts from the Unsecured Claims Cash shall be made as and in the amounts provided in the immediately preceding Section. The other assets from the Unsecured Claims Reserve being distributed on such date shall be distributed Pro Rata to all other holders of Allowed Unsecured Claims on such date. The aggregate amount of Unsecured Claims Cash so distributed from the Unsecured Claims Reserve shall leave in the Unsecured Claims Reserve a portion of the Unsecured Claims Cash sufficient, in the Debtor's judgment, to satisfy as provided in this Plan all Unsecured Claims that are Disputed Claims or undetermined Claims on date of such distribution. For purposes of establishing the Unsecured Claims Reserve, all Contingent Claims and Unliquidated Claims shall be deemed to have a zero amount, unless (a) previously estimated by Final Order of the Bankruptcy Court or (b) deemed by the Debtor to have a different amount for purposes of the Unsecured Claims Reserve.

5.      On the Final Unsecured Claims Distribution Date, the Debtor shall distribute or cause to be distributed to the holders of Allowed Unsecured Claims all of the Unsecured Claims Cash remaining in the Unsecured Claims Reserve. Such distribution shall first be made as and in the amounts provided in Section VI.J.3 to holders of Allowed Unsecured Claims who have previously received no distributions of Unsecured Claims Cash. The other remaining assets in the Unsecured Claims Reserve shall be distributed Pro Rata to all other holders of Allowed Unsecured Claims.

6.      To the extent that, as of the Final Unsecured Claims Distribution Date, the actual aggregate amount of Unsecured Claims Cash distributed prior to and on such date from the Class 6 Escrow to holders of Allowed Unsecured Claims pursuant to this Plan is less than $1,200,000, the escrow agent shall return the remaining funds in the Class 6 Escrow to the DIP Lenders on the Final Unsecured Claims Distribution Date, and the Confirmation Order shall so direct.

### K. Interim Distributions

The Debtor may make interim distributions to any Class then entitled to such a distribution at any time that the Debtor concludes, in its sole discretion, that such a distribution is appropriate. The Debtor, in its sole discretion, may determine to make any such interim distribution (including any Interim Distribution) first to one group of holders of Allowed Claims in a Class and subsequently to the rest of the holders of Allowed Claims in such Class.

### L. Disputed Payments or Distributions

In the event of any dispute between or among Claimants as to the right of any Person to receive or retain any distribution to be made to such Person under this Plan, the Debtor may in lieu of making such distribution to such Person make it instead into an escrow for payment or distribution as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves. Any Claimant which fails to raise such dispute pursuant to this Section VI.L by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed distribution by the Debtor shall be deemed to have forever waived any right to dispute such distribution or to restrict the use of such distribution.

### M. Further Authorizations

The Debtor, if and to the extent it believes necessary or appropriate, may seek such orders, judgments, injunctions and rulings that it deems necessary to further carry out the intentions and purposes of, and give full effect to the provisions of, this Plan.

## VII. TREATMENT OF EXECUTORY CONTRACTS

### A. Assumed Contracts

Except as otherwise provided in this Plan or in the Confirmation Order, as of the Effective Date the Debtor shall be deemed to have rejected each Executory Contract to which it is a party, unless such Executory Contract (1) was previously assumed or rejected by the Debtor; (2) previously expired or terminated pursuant to its own terms; (3) is specifically listed on Exhibit E of the Debtor's Disclosure Statement (as may be supplemented or modified) as being assumed by the Debtor; (4) is a License, other than a License specifically listed on Exhibit F of the Debtor's Disclosure Statement (as may be supplemented or modified) as being rejected by the Debtor; or (5) is the subject of a motion to assume filed by the Debtor on or before the date of the Confirmation Hearing. All items listed on the Exhibits referenced above, including Executory Contracts to be assumed, Licenses to be rejected, and payments for Cure, may be amended by the Debtor (with the written consent of the Administrative Agent and Senior Agent) until seven (7) days prior to the Confirmation Hearing. The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the Executory Contract rejections and assumptions described above, as of the Effective Date unless the applicable Executory Contracts have previously been assumed or rejected by order of the Bankruptcy Court or as a matter of law. To the extent that any of the insurance policies of the Debtor are deemed to be an Executory Contract, each such policy is assumed hereunder and retained by the Estate.

Unless otherwise provided on Exhibit E of the Debtor's Disclosure Statement (as may be supplemented or modified), each Executory Contract that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all Executory Contracts appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem related to such premises, unless any of the foregoing agreements has been rejected pursuant to any order of the Bankruptcy Court that may be entered prior to, at or after Confirmation, including the Confirmation Order. Any Claim arising from the Debtor's rejection of an Executory Contract will be classified as an Unsecured Claim and must be submitted pursuant to the terms hereof.

**B.      Payments Related To Assumption Of Executory Contracts**

Payments for Cure of Executory Contracts to be assumed pursuant to this Plan are hereby fixed at the amounts reflected on Exhibit E of the Debtor's Disclosure Statement (as may be supplemented or modified); if a party to an Executory Contract to be assumed contests the amounts reflected as the Cure payment on Exhibit E of the Debtor's Disclosure Statement (which may be supplemented or modified by the Debtor until seven (7) days prior to the Confirmation Hearing, with such amendment served on the affected parties), such party should file an objection to Exhibit E, as directed by the Court, no later than Noon (Arizona Time) two (2) days prior to the Confirmation Hearing. If no objections are filed to a Cure payment amount referenced in Exhibit E prior to such deadline, Exhibit E shall be fully binding with respect to such Cure payment amount, and no objection or other challenge to such Cure payment amount can be made thereafter. The Debtor and the objecting party shall attempt to resolve any timely objections to the amounts reflected in Exhibit E by mutual agreement prior to the Confirmation Hearing. If no agreed resolution can be reached, the Bankruptcy Court shall resolve such dispute at the Confirmation Hearing. Confirmation of this Plan shall be deemed (1) adequate assurance of prompt cure of any default under such Executory Contracts, based upon the Debtor's obligation in this Plan to make Cure payments, and (2) adequate assurance of future performance under such Executory Contracts.

**C.      Bar to Rejection Damages**

Proofs of Claim for damages allegedly arising from the rejection pursuant to this Plan or the Confirmation Order of any Executory Contract to which a Claimant is a party must be filed with the Bankruptcy Court and served on the Debtor not later than thirty (30) days after the earlier of: (1) an order of the Bankruptcy Court with respect to such rejection, or (2) if the rejection was pursuant to the Confirmation Order, the Confirmation Date. All Proofs of Claim for such damages not Timely Filed and properly served as prescribed herein shall be forever barred and the holder of such a Claim shall not be entitled to participate in any distribution under this Plan.

## VIII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

**A.      Responsibility for Objecting to Claims**

Only the Reorganized Debtor and no other party may file objections to Claims after the Effective Date. The failure of the Debtor prior to Confirmation to object to a Claim shall in no way be deemed to be a waiver of the right of the Debtor to object to such Claim in whole or in part. The Debtor or Reorganized Debtor reserves the right to contest and object to any Claim asserted against the Debtor, including any Claim not listed in the Schedules, listed therein as disputed, contingent or unliquidated in amount or listed therein at a lesser amount than asserted in a Proof of Claim. The DIP Lenders agree that they will provide funding to the Debtor sufficient to allow the Debtor's counsel to pursue bona fide objections to claims, and the Debtor shall pursue such claim objections with reasonable diligence; provided that such fees and expenses occurring subsequent to the Effective Date shall be reasonable and may be paid by the Reorganized Debtor without Bankruptcy Court approval, except that if a dispute arises between any Professional and the Reorganized Debtor which cannot be resolved consensually, such dispute shall be submitted to the Bankruptcy Court for resolution.

**B.      Objections to Claims**

The Debtor may reserve (in lieu of payment) for any Claim that the Debtor may, in good faith, dispute and with respect to which it has a right to object pursuant to Section VIII.A. A Claimant whose Claim is the subject of the objection must file with the Bankruptcy Court and serve upon the Debtor (or Reorganized Debtor, as applicable) a response to the objection. Failure to file and serve a response within the applicable period required by the Bankruptcy Code, Bankruptcy Rules or any order of the Bankruptcy Court shall allow the Bankruptcy Court to enter a default judgment against the non-responding Claimant and thereby grant the relief requested in the objection. After the Effective Date, the Reorganized Debtor shall be authorized to settle and compromise any and all Disputed Claims without Bankruptcy Court approval.

**C.      Filing and Assertion of Claims**

All Proofs of Claim, and the assertion of any Claim, must be filed and occur by the Bar Date or such Claim shall otherwise be forever barred. Moreover, any proofs of claim filed after the Bar Date shall be deemed disallowed in full and expunged without any action by the Debtor, unless the Claimant obtains an order of the Bankruptcy Court authorizing a late filing. Nothing herein shall affect, amend or modify any Bar Date in this Bankruptcy Case.

**D.      No Distributions Until Claim is an Allowed Claim**

Notwithstanding any other provision of this Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, and no payment or distribution shall be made with respect to a Claim other than an Allowed Claim. If a Claim that remains a Disputed Claim as of the Effective Date is thereafter Allowed in whole or in part, the Debtor shall make the distributions required by the provisions of this Plan to be made in respect of the Allowed portion of such Claim as and when, and in the installments, if any, required by such provisions; provided that, if and to the extent that such provisions would have required an earlier distribution or distributions had such Claim been Allowed as of the Effective Date, each distribution that would have been made earlier shall be made on the date that such Claim becomes an Allowed Claim, or as soon thereafter as reasonably practicable, or in accordance with the procedures in Article VI.

### E.    Voting

Holders of Disputed Claims shall not be entitled to vote with respect to this Plan unless such Claims are estimated, for voting purposes, by order of the Bankruptcy Court entered on or prior to the deadline for voting on this Plan.

Notwithstanding any other provision of this Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, and no payment or distribution shall be made with respect to a Claim other than an Allowed Claim. If a Claim that remains a Disputed Claim as of the Effective Date is thereafter Allowed in whole or in part, the Debtor shall make the distributions required by the provisions of this Plan to be made in respect of the Allowed portion of such Claim as and when, and in the installments, if any, required by such provisions; provided that, if and to the extent that such provisions would have required an earlier distribution or distributions had such Claim been Allowed as of the Effective Date, each distribution that would have been made earlier shall be made, without interest, on the date that such Claim becomes an Allowed Claim, or as soon thereafter as reasonably practicable, or in accordance with the procedures in Article VI.

### F.    Waiver of SKM Claim.

In consideration for releases by the Debtor hereunder and releases pursuant to Section X.D. hereof, SKM hereby waives and releases any claims against the Debtor and its estate, including with respect to accrued and unpaid management fees. In consideration for such waiver and release, the Debtor hereby releases, remises and forever discharges SKM of and from all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, claims, rights, damages, losses or liabilities of any kind whatsoever, both at law and in equity, whether known or unknown which arose at any time prior to the date hereof or which hereafter could arise based on any act, fact, transaction, cause, matter or thing which occurred prior to the date hereof.

## IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    Conditions to Confirmation

A Confirmation Order, in form and substance reasonably acceptable to the Debtor, the DIP Lenders and the Senior Lenders, entered by the Bankruptcy Court is a condition precedent to Confirmation of this Plan that must be either (1) satisfied or (2) waived in accordance with Article IX.C below. Such Confirmation Order must approve all material provisions of the Plan, including Article X hereof. Confirmation shall have occurred by November 15, 2005, unless such requirement shall have been waived in writing by the DIP Lenders and the Senior Lenders.

### B.    Conditions to Consummation

The following are conditions precedent to the occurrence of the Effective Date, each of which must be (a) satisfied or (b) waived in accordance with Article IX.C below:

1.    The Confirmation Order, in form and substance reasonably acceptable to the Debtor, the DIP Lenders and the Senior Lenders, confirming this Plan, as the same may have

-17-

been modified to the extent permitted in Article XI hereof, must have been entered by the Bankruptcy Court and shall become a Final Order.

2.  The Exit Financing Facility Documents, each in form and substance acceptable to the DIP Lenders, the Senior Lenders and the Debtor, shall have been finalized, fully executed, and the transactions contemplated thereby shall have been consummated. The Exit Financing Lenders shall have funded $1.2 million to the Debtor to be placed in an escrow account and designated for distribution to the holders of Allowed Unsecured Claims pursuant to the Plan.

3.  Each of the other Plan Documents, in form and substance reasonably acceptable to the Debtor, the DIP Lenders and the Senior Lenders, shall have been effected or executed and delivered.

4.  The sum of the aggregate amount of (i) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, Allowed PACA Claims, Unsecured Claims Cash and (ii) the Cash reserved for the Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, Other Secured Claims, PACA Claims which are Disputed Claims shall not exceed the difference between (x) $4,600,000 minus (y) the aggregate amount of all Professional Fees actually paid by the Debtor prior to the Effective Date.

5.  The Reorganized Debtor shall have sufficient Cash to make all payments required to be made on the Effective Date and to fund all reserves required pursuant to this Plan.

6.  All other actions, documents and agreements necessary to implement this Plan shall have been effected or executed and delivered.

**C.    Waiver of Conditions.**

Each of the conditions set forth above may be waived in whole or in part by the Debtor upon the prior written consent of the DIP Lenders and the Senior Lenders, without any notice to parties in interest or the Bankruptcy Court and without a hearing. The Debtor's waiver of any condition shall not be deemed a waiver of any other condition.

**D.    Notice of Effective Date.**

After the occurrence of the Effective Date, the Debtor shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of: (1) entry of the Confirmation Order; (2) the occurrence of the Effective Date; (3) the deadline established under this Plan for the filing of Administrative Expense Claims; and (4) such other matters as the Debtor deems to be appropriate.

**X. EFFECTS OF PLAN CONFIRMATION**

**A.    Satisfaction, Release and Discharge of Claims**

Except as otherwise specifically provided in this Plan or in the Confirmation Order, the Confirmation of this Plan shall, subject to the occurrence of the Effective Date, discharge the Debtor and its property and assets from all Claims that existed or arose before the

Confirmation Date and extinguish completely all liabilities in respect of any Claim or other obligation or Equity Interest, whether reduced to judgment or not, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that existed or arose from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise existed or arose prior to the Confirmation Date, including, without limitation, all interest, if any, on any such Claims, Equity Interests or obligations, whether such interest accrued before or after the Petition Date, and including, without limitation, any liability of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not a Proof of Claim is filed or deemed filed under section 501 of the Bankruptcy Code, such Claim is allowed under section 502 of the Bankruptcy Code, or the holder of such Claim accepted this Plan. Except as otherwise specifically provided in this Plan or in the Confirmation Order, the treatment of and consideration to be received by holders of Allowed Claims or Equity Interests pursuant to this Plan are in full satisfaction, settlement, discharge, and release of and in exchange for such holders' respective Claims against or Equity Interests in the Debtor and the Estate.

**B.    Injunction**

Except as otherwise specifically provided in this Plan or in the Confirmation Order, if the Effective Date occurs the Confirmation Order shall and shall be deemed to permanently enjoin on and after the Effective Date, all Persons that have held, currently hold or may hold a Claim against, or be owed obligations by, the Debtor or the Estate or any Representative of the Debtor or the Estate, or who have held, currently hold or may hold an Equity Interest in the Debtor, from taking any of the following actions on account of such Claim or Equity Interest: (1) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor, the Estate, or any of their respective Affiliates or Representatives; (2) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, directly or indirectly, any judgment, award, decree, or order against the Debtor, the Estate, or any of their respective Affiliates or Representatives; (3) creating, perfecting or enforcing in any manner, directly or indirectly, any lien, charge, encumbrance or other Lien of any kind against the Debtor, the Estate, or any of their respective Affiliates or Representatives; (4) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtor, the Estate, or any of their respective Affiliates or Representatives; and (5) proceeding in any manner, directly or indirectly, in any place whatsoever against the Debtor, the Estate, or any of their respective Affiliates or Representatives.

**C.    No Liability for Solicitation or Participation**

Pursuant to section 1125 of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under or in connection with this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

**D.    Releases and Limitation of Liability of Exculpated Persons**

1.     The Exculpated Persons shall not have or incur any liability to any Person for any act taken or omission made in good faith in connection with or in any way related to, or arising out of, the Bankruptcy Case, or the negotiating, formulating, implementing, confirming, or consummating this Plan, the Disclosure Statement or any contract, instrument, filing with governmental agencies, release, or other agreement or document created in connection with or related to this Plan, the Disclosure Statement, or the administration of the Bankruptcy Case, or with respect to any liability, claim or cause of action, whether known or unknown, asserted or unasserted, belonging to or assertable by the Debtor or the Estate against the Exculpated Persons, from the beginning of time until the Effective Date. The Exculpated Persons shall have no liability to any Person for actions taken in good faith under or relating to this Plan or the other matters described above or in connection with the administration of the Bankruptcy Case including, without limitation, failure to obtain confirmation of this Plan or to satisfy any condition or conditions precedent, or waiver of or refusal to waive any condition or conditions precedent to Confirmation or to the occurrence of the Effective Date. Further, the Exculpated Persons shall not have or incur any liability to any Person for any act or omission in connection with or arising out of their administration of this Plan, except for gross negligence or willful misconduct as determined by the Bankruptcy Court.

Neither the Debtor, the Reorganized Debtor nor any of their respective officers, directors, employees, advisors, attorneys, agents or Representative as of the Petition Date, shall have or incur any liability to any holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective agents, employees, Representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Case, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of the Estate or of this Plan or the property to be distributed under this Plan, so long as such act or omission was made in good faith and not in willful violation of the Bankruptcy Code. In all respects they shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under this Plan.

Notwithstanding any other provision of this Plan, no holder of a Claim or Equity Interest, no other party in interest, none of their respective directors, officers, partners, members, shareholders, agents, employees, Representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtor, or any of its officers, directors, employees, advisors, attorneys, agents or Representatives as of the Petition Date, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of the Estate or of this Plan or the property to be distributed under this Plan, so long as such act or omission was made in good faith and not in willful violation of the Bankruptcy Code. In all respects they shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under this Plan.

2.     On the Effective Date, in consideration for, and as part of the treatment afforded to holders of claims (including, but not limited to, Claims) under this Plan, and for other valuable consideration, each of the Persons who are or after the Petition Date were directors or officers of the Debtor, and each of the DIP Lenders, the Administrative Agent, the Senior Lenders, the Senior Agent, and each of the Debtor's, DIP Lenders', the Administrative Agent's, the Senior Lenders', and Senior Agent's respective Representatives, predecessors, participants

and Affiliates shall be forever irrevocably and unconditionally released and discharged from any and all claims, actions, suits, debts, accounts, causes of action, agreements, promises, damages, judgments, demands and liabilities which any of the Debtor or Claimants or other Persons may have against them, whether held directly, indirectly, or derivatively, which are in any way related to the Debtor, or any of their Affiliates, and arise from facts, circumstances, events or conditions occurring or otherwise existing prior to the Effective Date. This release shall include all claims or causes of action, whether known or unknown, and all acts and omissions, whether intentional or otherwise.

3. On the Effective Date, in consideration for, and as part of the treatment afforded to holders of claims (including, but not limited to, Claims) under this Plan, and for other valuable consideration, each of the Senior Lenders, the Administrative Agent, Senior Agent, DIP Lenders and SKM and each of their officers, directors, employees, agents, professionals and other Representatives shall be released, from any and all claims or causes of action that the Debtor or any third party (including any Claimants or creditors of the Debtor) may have asserted, could have asserted, or could in the future assert, directly or indirectly, for any actions or omissions arising from or related to the Debtor, the Senior Credit Facility, the DIP Facility or the Bankruptcy Case. This release shall include all claims or causes of action whether known or unknown, and all acts and omissions, whether intentional or otherwise.

**E. Plan Obligations Not Released**

Notwithstanding anything in the Plan to the contrary (including, without limitation, Article X.D. hereof), nothing in the Plan shall, or shall be deemed to, release the Exculpated Persons or any other Persons from, or exculpate the Exculpated Persons or any other Persons with respect to, their respective obligations or covenants arising pursuant to this Plan.

**F. Term of Injunctions and Stays**

Unless otherwise specifically provided in this Plan or the Confirmation Order, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105, 362 or 524 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

**G. No Liability for Tax Claims**

Unless a taxing authority has asserted a Claim against the Debtor before the Bar Date established therefor, no Claim of such authority shall be Allowed against the Debtor or Reorganized Debtor, the Estate or their respective Representatives for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor or any other Person to have paid taxes or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

**H. Release of Liens**

Except as otherwise specifically provided in this Plan or the Confirmation Order, all Liens, security interests, deeds of trust, or mortgages against property of the Debtor or the Estate shall and shall be deemed to be released, terminated, and nullified as of the Effective

Date; and the Bankruptcy Court, at the request of the Debtor, may appoint a Person to execute appropriate releases of such Liens, security interests, deeds of trust or mortgages. As provided in this Plan and the Exit Financing Facility, the Liens of the holders of the Senior Lender Claims and the DIP Facility Claims shall be retained by the Exit Financing Lenders, all of which Liens are reaffirmed.

**I. Administration Pending Effective Date**

Prior to the Effective Date, the Debtor shall continue to manage its properties and operate its business as a debtor-in-possession, subject to all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules. After the Effective Date, the Reorganized Debtor may manage its properties, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, but subject to the continuing jurisdiction of the Bankruptcy Court as set forth in Article XII hereof.

## XI. MODIFICATIONS AND AMENDMENTS

The Debtor may alter, amend, or modify this Plan or any exhibits or annexes hereto under section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 at any time prior to the Confirmation Date with the prior written consent of the DIP Lenders and the Senior Lenders. After the Confirmation Date and prior to substantial consummation of this Plan, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan if the circumstances warrant such modifications; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## XII. RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including: (a) the resolution of any request for payment of any Administrative Expense Claim, and (b) the resolution of and objections to the allowance or priority of Claims or Equity Interests;

2. Hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code;

3. Hear and determine all matters with respect to the assumption or rejection of any Executory Contact to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom and the motions to assume or reject each such

Executory Contract pursuant to Article VII, or to extend the time during which the Debtor can file such a motion;

4. Effectuate performance of and payments under the provisions of this Plan;

5. Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Bankruptcy Case;

6. Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

7. Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan, including without limitation, the Exit Financing Facility Documents;

8. Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

10. Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

11. Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

12. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case;

13. Recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

14. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

15. Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

16. Enter a final decree closing the Bankruptcy Case.

## XIII. COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Rule 9019(a), the Debtor and/or the Reorganized Debtor, as applicable, may compromise and settle various Claims against it and/or claims that it may have against other Persons. The Debtor and/or the Reorganized Debtor, as applicable, expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against it and claims that it may have against other Persons.

## XIV. MISCELLANEOUS PROVISIONS

### A. Bar Dates for Certain Claims

Notice of all final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code for services rendered to the Debtor or the Creditors' Committee prior to the Effective Date must be filed and served on the Debtor and those parties who have requested special notice pursuant to Bankruptcy Rule 2002(i), no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.

### B. Payment of Statutory Fees

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code shall be paid on or before the Effective Date.

### C. Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation; provided, however, that each of the Administrative Agent and the Senior Agent, in their good faith judgment, may cause the Plan to not be confirmed if such determination of the Bankruptcy Court would result in a material adverse effect to the interests of the DIP Lenders and the Senior Lenders, as the case may be. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### D. Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### E.  Creditors' Committee

On the Effective Date, the duties of the Creditors' Committee shall terminate, the Creditors' Committee shall dissolve and their retained professionals shall cease all employment concerning the Committee, with the exception that the Creditors' Committee may remain in existence following the Effective Date solely to (i) pursue any unresolved claim objection filed by it on or before September 30, 2005, and (ii) confirm that the Initial Distribution to Allowed Unsecured Claims has been made by the Reorganized Debtor. The Administrative Expense Claims of the Professionals serving for the Creditors' Committee following September 3, 2005 shall not exceed in the aggregate the sum of $100,000, including any actions taken post-Effective Date. The Debtor and/or the Reorganized Debtor, regardless of whether such post-September 3, 2005 Claims are Allowed Administrative Expense Claims, shall not be obligated to pay any Claims in excess of $100,000. If such Claims exceed in the aggregate $100,000, the Debtor and/or Reorganized Debtor shall pay such Claims Pro Rata to the Creditors' Committee Professionals in the aggregate sum of $100,000. The Creditors' Committee has agreed, pursuant to the Term Sheet by and Among Souper Salad, Summit and the Creditors' Committee signed on or about September 14, 2005, to support this First Amended Plan.

**THE OFFICIAL COMMITTEE FOR THE UNSECURED CREDITORS IN THIS CASE SUPPORTS THIS FIRST AMENDED PLAN OF REORGANIZATION AND URGES UNSECURED CREDITORS TO VOTE IN FAVOR OF THE PLAN.**

### F.  Binding Effect

The Plan shall be binding on and inure to the benefit of the Debtor, all present and former holders of Claims against and Equity Interests in the Debtor, their respective successors and assigns, including, but not limited to, the Debtor, all other parties-in-interest in the Bankruptcy Case, and the Creditors' Committee.

### G.  Revocation, Withdrawal, or Non-Consummation

The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws this Plan, or if Confirmation or Effective Date does not occur, then (1) this Plan shall be null and void in all respects, (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (3) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Person, (b) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (c) constitute an admission of any sort by the Debtor or any other Person.

### H.  Notices

Any notice, request, or demand required or permitted to be made or provided to or upon the Debtor under this Plan shall be (1) in writing, (2) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or

(e) facsimile transmission, and (3) deemed to have been duly given or made when actually delivered, or in the case of notice by facsimile transmission, when received by the Debtor and telephonically confirmed.

### I.   Indemnification Obligations

Except as otherwise specifically limited in this Plan, and conditioned upon the occurrence of the Effective Date and the granting of a release to the Debtor and approval of the exculpations provisions of Article X hereof, any obligations or rights of the Debtor to indemnify those individuals who have served as directors, officers, or employees at any time during the Bankruptcy Case pursuant to the Debtor's articles of incorporation, by-laws, policy of providing officer, director or employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such directors, officers, or employees based upon any post-petition act or omission in connection with, relating to, or arising out of, the Bankruptcy Case, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of the Estate or of this Plan or the property to be distributed under this Plan, or pursuant to any indemnification obligation that is entitled to priority as an expense of administration for any reason, shall survive Confirmation and be resolved in accordance with the terms of the agreement, corporate policy or applicable law under which such indemnification obligations arose.

### J.   Prepayment

Except as otherwise provided in this Plan or the Confirmation Order, the Debtor shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time, unless any such prepayment shall be violative of, or otherwise prejudice, the relative priorities and parities among the classes of Claims.

### K.   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) the laws of the State of New York (without giving effect to the conflicts of law principles of such jurisdiction) shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan.

### L.   Retention of Actions and Defenses

Except as otherwise provided in this Plan or the Confirmation Order, all claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estate within the meaning of section 541 of the Bankruptcy Code, as well as all claims, rights, defenses, offsets, recoupments, and causes of action arising under Chapter 5 of the Bankruptcy Code (including without limitation the Avoidance Actions) with respect to the Debtor, shall be and hereby are preserved for the benefit of the Reorganized Debtor and shall be and hereby are deemed to be part of the assets of the Debtor. Preference Claims, a subset of actions not included in the definition of Avoidance Actions herein, shall not be pursued by any party.

**M.   Plan Controls**

To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and this Plan, the terms and provisions of this Plan shall control.

**N.   Substantial Consummation of Plan**

The Plan shall be deemed to be substantially consummated on the Effective Date.

**O.   Certain Property and Funds**

1.   If any property distributed by the Debtor pursuant to this Plan remains unclaimed for a period of 180 days after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Debtor free and clear of any rights, Claims or interests of such Person. No such property shall escheat. The use of regular mail, postage prepaid, to the last known address of a holder of a Claim according to the books and records of the Debtor shall constitute delivery for purposes of this Section.

2.   Any benefit or obligation owing by the Debtor of funds which may be in suspense and attributable to a public or private entity, of which no party has asserted a Proof of Claim in this proceeding, shall be treated as unclaimed property, as provided above, and such property shall revert to and vest in the Debtor, free and clear of any rights, Claims or interests of any Person, and shall not escheat.

3.   Any check issued prior to the Effective Date to an employee or former employee of the Debtor for compensation which is not negotiated before the later of (a) 180 days after such check was issued or (b) the Effective Date shall be null, void and unenforceable against the Debtor, the funds related to such check shall remain the property of and be retained by the Reorganized Debtor and shall not escheat, and the claim of any such employee with respect to such check or funds shall be discharged and forever barred.

**P.   Responsible Party Injunction**

The Confirmation Order shall constitute and provide for an injunction by the Bankruptcy Court as of the Effective Date against any holder of a Priority Tax Claim from commencing or continuing any action against any responsible person or officer or director of the Debtor or Reorganized Debtor.



**Q. Pre-Petition Lawsuits**

On the Effective Date, all lawsuits, litigation, administrative actions or other proceedings, judicial or administrative, relating to pre-petition events or conduct of the Debtor, in connection with the assertion of a Claim, shall be dismissed as to the Debtor and Reorganized Debtor. Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by this Plan. Confirmation of this Plan and entry of the Confirmation Order shall have no effect on insurance policies of the Debtor and Reorganized Debtor.

**R. Disallowance of Certain Claims including Penalty Claims, Duplicate Claims, Untimely Filed Claims and Claims Already Paid by the Debtor**

The filing of this Plan and its submission to the holders of Claims which assert any fine, penalty, or forfeiture, or multiple, exemplary, or punitive damages (as referenced in section 726(a)(4) of the Bankruptcy Code or any other Penalty Claim shall constitute an action seeking to subordinate all such Claims pursuant to section 510 of the Bankruptcy Code. The Confirmation Order, except as provided herein, shall constitute an order subordinating such Claims to all other Claims pursuant to section 510 of the Bankruptcy Code and no distribution shall be made on such Claims pursuant to this Plan.

The filing of the Plan shall also constitute a motion to disallow, or expunge (as applicable), all Claims which are duplicate claims, Claims submitted to the official claims agent following August 19, 2005 (the Bar Date), and all claims that have previously been paid by the Debtor.

**S. Defaults**

Any act or omission by a party in interest in contravention of a provision of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Debtor may seek to hold the defaulting party in contempt of the Confirmation Order. If such party in interest is found to be in default under this Plan, such party shall pay the reasonable attorneys' fees and costs of the Debtor in pursuing such matter. Furthermore, upon the finding of such a default by a party in interest, the Bankruptcy Court may (1) designate a party to appear, sign and/or accept the documents required under this Plan on behalf of the defaulting party, in accordance with Federal Rules of Civil Procedure, Rule 70; or (2) make such other order as may be equitable which does not materially alter the terms of this Plan as it is Confirmed.

**T. Management Equity Compensation Plan**

Following the Effective Date, the Post-Confirmation Board may, in its sole discretion, establish a Management Equity Compensation Plan which may provide for the issuance of awards for up to 10% of the outstanding common stock of the Reorganized Debtor, subject to dilution for common stock issued under such plan. All terms and conditions of any such plan or awards granted thereunder (including, without limitation, vesting schedules, post-termination exercise periods and grant amounts) shall be established at the discretion of the Post-Confirmation Board.

**U.  Management of Reorganized Debtor**

On the Effective Date, the management, control and operation of the Reorganized Debtor shall become the general responsibility of the board of directors of the Reorganized Debtor (the "Post-Confirmation Board"), which shall, thereafter, have responsibility for the management, control and operation of the Reorganized Debtor in accordance with applicable law. As of the Effective Date, the Post-Confirmation Board shall consist of four (4) members to be designated by the Senior Lenders and one (1) non-director board observer to be designated by the CEO of the Reorganized Debtor. The designation of the members of the Post-Confirmation Board shall be filed with the Bankruptcy Court on or prior to the commencement date of the Confirmation Hearing, or such later date as the Bankruptcy Court may establish.

**V.  Change of Domicile and Form of Entity**

On or after the Effective Date, the Reorganized Debtor may, but shall not be required to, (1) change the jurisdiction of its organization from the State of Texas to the State of Delaware or (2) change its organizational form from a business corporation to a limited liability company. The Reorganized Debtor may effect such changes by means of a merger or conversion, as authorized by the laws of the State of Texas and, if the Reorganized Debtor is changing its jurisdiction of organization, the State or Delaware. Confirmation of this Plan shall constitute the approval of such changes and the transactions contemplated thereby by all of the holders prior to or on the Effective Date of the common stock of Debtor and the Reorganized Debtor and of the holders of any other Equity Interests whose vote or approval may be required and also constitutes all other corporate action necessary on the part of the Debtor, the Reorganized Debtor or otherwise, to authorize such changes and the transactions contemplated thereby. Appropriate documents with respect to any such merger or conversion which the Reorganized Debtor elects to effect shall be signed and filed or caused to be filed by the President or any Vice President or other authorized officer of the Reorganized Debtor. The Confirmation Order shall provide for the matters set forth in this Section.



## XV. CONFIRMATION REQUEST

The Debtor hereby requests confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

Dated: September 16, 2005       SOUPER SALAD, INC.

By: /s/ Hazem Ouf
Title: President and CEO

Dated: September 16, 2005       BRACEWELL & GIULIANI LLP
Attorneys for the Debtor

/s/ Henry J. Kaim
By: Henry J. Kaim

Henry J. Kaim
Mark W. Wege
BRACEWELL & GIULIANI LLP
711 Louisiana, Suite 2300
Houston, Texas 77002

- and -

Daniel P. Collins
COLLINS, MAY, POTENZA,
    BARAN & GILLESPIE, P.C.
Bank One Center
201 North Central, Suite 2210
Phoenix, Arizona 85073-0022

Attorneys for Souper Salad, Inc.
Debtor and Debtor-in-Possession



## ANNEX A-1

## Definitions

1. "Additional Unsecured Claims Cash" means (a) $50,000, if the amount of the Aggregate Allowed Unsecured Claims is less than $6,666,666; (b) an amount equal to the product of (i) the difference between (x) $8,000,000 minus (y) the amount of the Aggregate Allowed Unsecured Claims, times (ii) .0375, if the amount of the Aggregate Allowed Unsecured Claims is equal to or greater than $6,666,666, and less than $8,000,000; and (c) zero, if the amount of the Aggregate Allowed Unsecured Claims is $8,000,000 or more.

2. "Administrative Agent" means SummitBridge National Investments LLC, as Administrative Agent under the DIP Facility.

3. "Administrative Expense Claim" means a Claim (other than a DIP Facility Claim) for payment of an administrative expense of a kind specified in Section 503(b) or 114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estates and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Bankruptcy Case; (b) Professional Fees, (c) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code; and (d) all Allowed Claims that are entitled to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court.

4. "Administrative Expense Claims Bar Date" means forty-five (45) days after the Effective Date (i) for any alleged Administrative Expense Claims that arose after any earlier Administrative Expense Claims bar dates that have been established by order of the Bankruptcy Court, or (ii) if no earlier Administrative Expense Claims bar date has been established by order of the Bankruptcy Court, for all alleged Administrative Expense Claims, other than Ordinary Course Administrative Expense Claims. With respect to any alleged Administrative Expense Claim that arose prior to any earlier Administrative Expense Claims bar date that has been established by order of the Bankruptcy Court, "Administrative Expense Claims Bar Date" means such earlier bar date. Nothing herein shall extend any prior Administrative Expense Claims bar dates that have been established by order of the Bankruptcy Court.

5. "Affiliate" shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code and, in addition, shall mean, with respect to any Person, any other Person directly or indirectly controlling (including all directors, officers, managers and general partners of such Person, and Persons performing similar functions), directly or indirectly controlled by or under direct or indirect common control with such Person. For purposes of this definition, the term "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative of the foregoing.

6. "Aggregate Allowed Unsecured Claims" means the aggregate amount of all Unsecured Claims which have been Allowed on or prior to the Final Unsecured Claims Distribution Date.

7.    "Allowed" means, as it relates to any type of Claim provided for under this Plan (other than a PACA Claim or a Disputed, Contingent or Unliquidated Claim), a Claim (a) which has been scheduled as undisputed, noncontingent and liquidated in the Schedules and as to which (i) no Proof of Claim has been Timely Filed, and (ii) no objection thereto has been Timely Filed; (b) as to which a Proof of Claim has been Timely Filed and either (i) no objection thereto has been Timely Filed, or (ii) such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (c) which has been expressly allowed (but only to the extent expressly allowed) under the provisions of this Plan or by other order of the Bankruptcy Court; or (d) which is an Administrative Expense Claim approved by Final Order of the Bankruptcy Court. Disputed, Contingent or Unliquidated Claims shall become Allowed Claims only when Allowed pursuant to a Final Order of the Bankruptcy Court. PACA Claims shall become Allowed Claims when they are approved under the procedures set forth in the PACA Claims Order or by Final Order. "Allowance" shall have correlation meanings.

8.    "Avoidance Actions" means any and all actions which a trustee, debtor-in-possession or other appropriate party in interest may assert on behalf of the Estate under applicable state statute or Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 542, 543, 544, 545, 546, 548, 549, 550, 551) and 553; provided however, as used herein "Avoidance Actions" shall not include Preference Claims.

9.    "Ballot" means the ballot accompanying the Disclosure Statement to which this Plan is an Exhibit, provided to each holder of a Claim or Equity Interest entitled to vote to accept or reject this Plan pursuant to the terms of the Debtor's Disclosure Statement and any order entered by the Bankruptcy Court.

10.    "Bankruptcy Case" means the bankruptcy case initiated by Souper Salad when it filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 6, 2005.

11.    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, as now in effect or hereafter amended.

12.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Arizona or such other court as may have jurisdiction over the Bankruptcy Case.

13.    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Bankruptcy Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Bankruptcy Case or proceedings therein, as the case may be.

14.    "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing Proofs of Claim against the Debtor.

15.    "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" within the meaning of Bankruptcy Rule 9006.

16.    "Cash" means legal tender of the United States or equivalents thereof.

17.    "Charter Amendment" means an amendment to the restated articles of incorporation, as amended, of the Debtor prohibiting the issuance of nonvoting equity securities,

in accordance with Section 1123(a)(6) of the Bankruptcy Code, in substantially the form filed with the Bankruptcy Court as a Plan Document.

18. "Claim" means a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

19. "Claimant" means the holder of any Claim against the Debtor, its property or the Estate, or of any Equity Interest.

20. "Class" means a category of Claims or Equity Interests established under this Plan pursuant to section 1122 of the Bankruptcy Code.

21. "Class 6 Escrow" shall have the meaning ascribed thereto in Section IV.B.4 of this Plan.

22. "Collateral" means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not invalid, unenforceable or subject to avoidance under the Bankruptcy Code or other applicable law.

23. "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order.

24. "Confirmation Date" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

25. "Confirmation Hearing" means the hearing before the Bankruptcy Court under section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be continued, rescheduled or delayed.

26. "Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented, and whether or not such order has become a Final Order.

27. "Contingent Claim" means ay Claim that has not matured and is dependent upon an event that has not occurred or may never occur.

28. "Convertible Subordinated Notes" means those notes issued to or held by Mr. Feinberg.

29. "Creditors' Committee" means the committee of unsecured creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Bankruptcy Case.

30. "Cure" means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such Executory Contract, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

31. "Debtor" means Souper Salad, including in its capacity as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, and as reorganized hereunder.

32. "DIP Amount" means an amount equal to all outstanding DIP Facility Claims (including, without limitation, the amount of the DIP Final Draw), on the Effective Date immediately prior to the execution and delivery Amended and Restated Term Loan Agreement under the Exit Financing Facility that amends and restates the DIP Facility and the Senior Credit Facility.

33. "DIP Facility" means the debtor-in-possession credit facility provided to the Debtor during the Bankruptcy Case under the Debtor-in-Possession Credit Agreement dated as of June 6, 2005, among the Debtor, the Administrative Agent and the DIP Lenders (as same has been or may be amended, the "DIP Loan Agreement").

34. "DIP Facility Claim" means all Claims of the Administrative Agent and the DIP Lenders arising under the DIP Facility, the DIP Loan Documents, the DIP Financing Order and this Plan (including, without limitation, the DIP Final Draw).

35. "DIP Final Draw" means a borrowing by the Debtor on the Effective Date in the amount necessary to pay all unpaid Administrative Expenses, Priority Claims and all other cash payments required under this Plan; provided, however, that (a) the DIP Final Draw shall only be made to the extent that cash on hand from operations is insufficient to satisfy the foregoing cash requirements on the Effective Date (and any such draw shall otherwise be subject to the terms and conditions of the DIP Loan Documents including the maximum facility amount contained therein), and (b) if the Effective Date shall occur on a date that is subsequent to the date of the DIP Final Draw, then amount of the DIP Final Draw for purposes of calculating the DIP Facility Claims shall include accrued and unpaid interest on the DIP Final Draw calculated pursuant to the DIP Financing Documents.

36. "DIP Financing Order" means the Final Order of the Bankruptcy Court dated June 29, 2005, approving and authorizing the terms of the DIP Facility in the Bankruptcy Case pursuant to the DIP Loan Documents.

37. "DIP Lenders" means SummitBridge National Investments LLC and Sun Capital Partners Group, Inc., as lenders under the DIP Facility.

38. "DIP Loan Agreement" has the meaning set forth in the definition of DIP Facility.

39. "DIP Loan Documents" shall mean the DIP Loan Agreement and all other documents and instruments evidencing and/or setting forth the terms of debtor-in-possession financing arrangements in the Bankruptcy Case as approved by the DIP Financing Order.

40. "Disclosure Statement" means the written disclosure statement that relates to this Plan, including all exhibits, appendices, schedules, and annexes attached thereto, as submitted by the Debtor pursuant to Section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such disclosure statement may be amended, supplemented, or modified from time to time.

41. "Disputed Claim" means any Claim or any portion thereof that is a Contingent Claim or an Unliquidated Claim or has not become Allowed. For purposes of this Plan, a Claim that has not been Allowed by a Final Order shall be considered a Disputed Claim, whether or not an objection has been or may be Timely Filed, if (a) the amount of the Claim specified in the

Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules; (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules; (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated; (d) no corresponding Claim has been scheduled in the Schedules as unliquidated or contingent in the Proof of Claim filed in respect thereof; (f) a Proof of Claim was required to be filed and was not Timely Filed; (g) a party in interest has made a request for estimation in accordance with this Plan, the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court; or (h) the amount, validity, priority or other rights of the Claim are otherwise being disputed or contested or are subject to objection.

42. "Effective Date" means the Business Day on which all conditions to the consummation of this Plan as set forth in Article X.B. hereof have been satisfied or waived as provided in Article X.C. hereof and which is selected by the Debtor as the effective date of this Plan.

43. "Equity Interest" means any equity interest in the Debtor within the meaning of section 101(16) of the Bankruptcy Code, and any common stock, preferred stock or other equity or ownership interest in the Debtor, any security convertible into or exchangeable for such stock or interest (other than the Convertible Subordinated Notes), and any option (including the Options), warrant (including the Warrants) or other right to subscribe for or acquire or receive any of the foregoing, each as existing immediately prior to the Effective Date, including any claim subordinated pursuant to 11 U.S.C. § 510(b).

44. "Estate" means the estate of Souper Salad, Inc. in the Bankruptcy Case created pursuant to section 541 of the Bankruptcy Code.

45. "Exculpated Persons" means the Debtor, the Reorganized Debtor, and their respective Representatives, and the DIP Lenders, the Administrative Agent, the Senior Lenders, the Senior Agent and each of their respective predecessors, participants and Affiliates.

46. "Executory Contract" means a lease or executory contract within the meaning of section 365 of the Bankruptcy Code, including all Real Property Leases.

47. "Exit Financing Facility" means the Amended and Restated Term Loan Agreement including a letter of credit subfacility, to be dated the Effective Date, together will all other Exit Financing Facility Documents, to be entered into among the Reorganized Debtor, the Administrative Agent, the Senior Agent, the DIP Lenders and the Senior Lenders, and which will assume, combine, amend and restate the DIP Facility, the Senior Credit Facility and all related loan documentation as provided in this Plan and the Exit Financing Facility Documents on those terms identified further in Article III.B.3 of the Plan.

48. "Exit Financing Facility Documents" means the Exit Term Loan Agreement, the New Term Loan Notes, and all other documents, instruments and agreements to be executed in connection therewith that will set forth the terms and conditions of the Exit Financing Facility.

49. "Exit Financing Lenders" mean the holders of the Allowed DIP Facility Claims and the Allowed Senior Lender Claims as the lenders under the Exit Financing Facility.

50.    "Exit Term Loan Agreement" means the Amended and Restated Term Loan Agreement which will provide, on the Effective Date, for a loan facility which will include those terms as provided in Article III.B.3(c) of this Plan.

51.    "Face Amount" means (a) when used in reference to a Disputed Claim, the full stated amount claimed by the holder of such Claim in any Proof of Claim Timely Filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

52.    "Final Order" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which (a) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

53.    "Final Unsecured Claims Distribution Date" means a date selected by the Debtor on which all Unsecured Claims Cash remaining in the Unsecured Claims Reserve is distributed to the holders of Allowed Unsecured Claims.

54.    "Impaired" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

55.    "Initial Distribution Date" means the first Business Day after the Effective Date, or as soon as practicable thereafter, as determined by the Debtor; provided however, with respect to Allowed Unsecured Claims the Initial Distribution Date (subject to reserves for disputed claims) shall occur as soon as practicable after the Effective Date, but not later than 30 days after the Effective Date, unless the Committee agrees to a later date or the Bankruptcy Court orders otherwise.

56.    "Interim Distribution" means any distribution of a portion of the Unsecured Claims Cash to holders of Allowed Unsecured Claims before the Final Unsecured Claims Distribution Date.

57.    "License" means any license or other right of the Debtor to use personal property, including licenses to use computer hardware and software and other intellectual property.

58.    "Lien" means a charge against or interest in property to secure payment of a debt or performance of any obligation, including without limitation a security interest as defined in the Bankruptcy Code section 101(51) of the Bankruptcy Code, whether granted before or after the Petition Date, including all Liens created pursuant to the Bankruptcy Court's orders.

59.    "Management Equity Plan" means an omnibus management and director stock incentive plan described generally in Article XIV of the Plan.

60. "New Term Loan A Notes" means the New Term Loan A Notes in the aggregate principal amount of up to $12,000,000 to be issued pursuant to the Exit Financing Facility to the holders of the Allowed DIP Facility Claims and the Allowed Senior Lender Claims pursuant to Articles III.B.2. and III.B.3. of this Plan, respectively.

61. "New Term Loan B Notes" means the New Term Loan B Notes in the aggregate principal amount of up to $9,000,000 to be issued pursuant to the Exit Financing Facility to the holders of the Allowed DIP Facility Claims and the Allowed Senior Lender Claims pursuant to Articles III.B.2. and III.B.3. of the Plan, respectively.

62. "New Term Loan Notes" means, collectively, the New Term Loan A Notes and the New Term Loan B Notes.

63. "New Term Loans" means, collectively, Term Loan A and Term Loan B.

64. "Options" means the outstanding options to purchase any Equity Interests of the Debtor.

65. "Ordinary Course Administrative Expense Claim" means any Administrative Expense Claim incurred in the ordinary course of the Debtor's business on and after the Petition Date but shall not include: (a) any Claim for Professional Fees and any expenses, compensation, or reimbursement requested pursuant to subsections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code and any Committee members' expenses, which shall be subject to Bankruptcy Court approval; (b) any taxes (including income, sales, use, property or other taxes incurred subsequent to the Petition Date); (c) any Claims for breach of contract, tort, or other actionable conduct; (d) any post-petition obligations incurred under Executory Contracts which are rejected pursuant to this Plan on or prior to the Effective Date of this Plan; and (e) any post-petition obligations which are past due or cure payments.

66. "Other Priority Claim" means a Claim entitled to priority pursuant to section 507(a)(3), (4), (5) or (6) of the Bankruptcy Code and does not include any Priority Tax Claim or Administrative Expense Claim.

67. "Other Secured Claims" means any Secured Claim other than the DIP Facility Claims and the Senior Lender Claims.

68. "PACA Claims" means Claims under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499 et seq., solely to the extent such Claims are valid, perfected and enforceable against the Debtor.

69. "PACA Claims Order" means the Order Granting Emergency Motion for Authority to Pay Pre-Petition Claims under the Perishable Agricultural Commodities Act and Establish Procedures Related Thereto of the Bankruptcy Court dated June 7, 2005.

70. "Penalty Claims" means any Claims which assert any fine, penalty, or forfeiture, or multiple, exemplary, or punitive damages as referenced in section 726(a)(4) of the Bankruptcy Code, and any Claim arising from a default, breach, violation or similar matter by the Debtor solely as a result of the bankruptcy filing by the Debtor.

71. "Person" means any natural person, corporation, limited partnership, general partnership, limited liability company, joint venture, trust, unincorporated organization, association, government, agency, political subdivision thereof, governmental unit or other entity.

72. "Petition Date" means June 6, 2005, the date on which Souper Salad filed its petition for relief commencing the Bankruptcy Case.

73. "Plan" means this Chapter 11 reorganization plan for Souper Salad together with all Exhibits and Annexes hereto or referenced herein, as the same may be amended, modified or supplemented form time to time.

74. "Plan Document" means any other document filed by the Debtor as a Plan Document in connection with this Plan at least three Business Days before the date of the Confirmation Hearing.

75. "Post-Confirmation Board" shall have the meaning set forth in Article XIV.U. of the Plan.

76. "Preference Claims" shall include any action for avoidance of preferential transfers pursuant to Bankruptcy Code section 547.

77. "Priority Claim" means all Claims entitled to priority under Bankruptcy Code section 507, including all Unclassified Priority Claims and all Claims in Class 1 with respect to the Debtor.

78. "Priority Tax Claim" means a Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

79. "Professional" means any professional employed in the Bankruptcy Case pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code or otherwise and the professionals seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

80. "Professional Fees" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services performed or costs and expenses incurred after the Petition Date and prior to and including the Effective Date.

81. "Pro Rata" or "Pro Rata Portion" means at any time, the proportion that the Face Amount of a Claim bears to the aggregate Face Amount of all Claims (including Disputed Claims) in a Class, unless this Plan provides otherwise.

82. "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

83. "Real Property Lease" means a lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.

84. "Reorganized Debtor" means Souper Salad after the Effective Date.

85. "Reorganized Debtor Common Stock" means shares of common stock, no par value per share, of the Reorganized Debtor as it exists on and following the Effective Date, all of which will be issued to the holders of the Senior Lender Claims (after the Equity Interests and Convertible Subordinated Notes have been cancelled).

86. "Representative" means, with respect to any specified Person, the officers, directors (or the functional equivalent, if any), employees, agents, attorneys, accountants, financial advisors, other representatives, subsidiaries, loan servicers, affiliates or any Person who controls any of these within the meaning of the Securities Act or the Securities Exchange Act of 1934, as amended.

87. "SKM" means Saunders, Karp & Megrue, LLC, Apax Partners, L.P., SKM Equity Fund II, SKM Investment Fund II, L.P., Dan Bonoff, Chris Reilly, Allan Karp, David Odd, and their respective partners, members and representatives.

88. "Schedules" means the schedules of assets and liabilities and the statements of financial affairs, if any, filed in the Bankruptcy Court by Souper Salad, as such schedules or statements may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

89. "Secured Claim" means a Claim, other than a Setoff Claim, that is secured by a security interest in or lien upon property, or the proceeds of the sale of such property, in which the Debtor has an interest to the extent of the value, as of the Confirmation Date or such later date as is established by the Bankruptcy Court, of such security interest or lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Senior Lenders, Debtor and the holder of such Claim.

90. "Securities Act" means the Securities Act of 1933, as now in effect or hereafter amended.

91. "Senior Agent" means SummitBridge National Investments LLC, as agent under the Senior Credit Facility.

92. "Senior Credit Amount" means an amount equal to $21,000,000 less the DIP Amount.

93. "Senior Credit Facility" means the Credit Agreement dated as of August 14, 1995, as amended, supplemented or otherwise modified from time to time, by and between the Debtor, the Senior Agent and the Senior Lenders.

94. "Senior Lenders" means SummitBridge National Investments LLC and SummitBridge Global Investments LLC, as lenders under the Senior Credit Facility.

95. "Senior Lender Claims" means all claims of the Senior Agent and the Senior Lenders arising from, under or related to the Senior Credit Facility and all related instruments, documents and/or agreements.

96. "Setoff Claim" means a Claim against the Debtor of a holder that has a valid right of setoff with respect to such Claim, which right is enforceable under section 553 of the

Bankruptcy Code as determined by a Final Order or as otherwise agreed in writing by the Debtor, to the extent of the amount subject to such right of setoff.

97. "Souper Salad" means Souper Salad, Inc., a Texas corporation, which is the debtor and debtor-in-possession in the Bankruptcy Case.

98. "Term Loan A" and "Term Loan B" mean, respectively, Term Loan A and Term Loan B under the Exit Financing Facility, representing the restructured term loans from the holders of the Allowed DIP Facility Claims and the Allowed Senior Lender Claims to the Reorganized Debtor, and having the material terms set forth in Article III.B.3(c) of this Plan.

99. "Timely Filed" means, with respect to a Claim, Equity Interest or Administrative Expense Claim, that a proof of such Claim or Equity Interest or request for payment of such Administrative Expense Claim was filed with the Bankruptcy Court within such applicable period of time fixed by this Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

100. "Unclassified Priority Claims" means the Claims specified in Sections II.B.1 and II.B.2.

101. "Unimpaired Claim" means a Claim that is not an Impaired Claim.

102. "Unliquidated Claim" means any Claim that is undetermined as to amount.

103. "Unsecured Claim" means any Claim against the Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, a DIP Facility Claim, a Senior Lender Claim, an Other Secured Claim, a PACA Claim, a Penalty Claim or an Equity Interest, and shall include all Claims of the holders of the Convertible Subordinated Notes.

104. "Unsecured Claims Cash" means cash in an aggregate amount equal to the sum of (a) the lesser of (i) 15% of the aggregate amount of all Allowed Unsecured Claims, or (ii) $1,200,000, plus (b) the Additional Unsecured Claims Cash, which cash is to be distributed to the holders of Allowed Unsecured Claims as provided in this Plan.

105. "Unsecured Claims Reserve" means the Unsecured Claims Cash that has not at the time of determination been distributed to the holders of Allowed Unsecured Claims pursuant to this Plan.

106. "Warrants" means the outstanding warrants to purchase any Equity Interests of the Debtor, including the SKM Equity Fund II L.P. Warrants, the SKM Investment Fund II L.P. Warrants, the Barry Feinberg Warrants, the PCB Capital Corp A Warrants, the PCB Capital Corp B Warrants, the Summitbridge Global Investment A Warrants, the Summitbridge Global Investment B Warrants, the Comerica A Warrants and the Comerica B Warrants.